# **EXHIBIT A**



| | **Ironshore Insurance Services LLC.** |
|---|---|
| | A subsidiary of Ironshore Holdings (U.S.) Inc. |
| | 50 South 16th Street |
| | Suite 3410 |
| | Philadelphia, PA  19102 |

January 28, 2015

Jerilynn Leahy
Beecher Carlson (MA)
15 Broad Street, 8th Floor
Boston, MA  02109

|  |  |  |
|---|---|---|
| **Re:** | 4 West Holdings, Inc. |
| | 2723 Summer Oaks Drive |
| | Bartlett, TN  38134 |
| **Line Of Business:** | Long Term Care – Primary |
| **Policy Number:** | 001163303 |
| **Policy Term:** | 12/29/2014 TO 12/29/2015 |

Dear Jerilynn:

Enclosed please find the policy for the above referenced account.   We appreciate your consideration of Ironshore.  Feel free to contact me with any questions or concerns.


Sincerely,


Brandon Mezick
Production Specialist
Ironshore Insurance Services LLC.
Office: +1 (267) 443-2891
Cell: +1 (215) 219-6445
Fax: 267-443-2883
Email: Brandon.Mezick@ironshore.com

Page: 1 of 1



## IRONSHORE SPECIALTY INSURANCE COMPANY

**Mailing Address:**
**75 Federal Street**
**5th Floor**
**Boston, MA  02110**
**Toll Free: (877) IRON411**

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.

# LONG TERM CARE ORGANIZATIONS PROFESSIONAL LIABILITY, GENERAL LIABILITY AND EMPLOYEE BENEFITS LIABILITY DECLARATIONS

THIS IS A CLAIMS MADE LIABILITY POLICY - PLEASE READ THE ENTIRE POLICY CAREFULLY.

**Policy Number:** 001163303

| ITEM 1.  NAMED INSURED AND PRINCIPAL ADDRESS | ITEM 2.  POLICY PERIOD |
|---|---|
| 4 West Holdings, Inc.<br>2723 Summer Oaks Drive<br>Bartlett, TN  38134 | (a)  **Inception Date:** December 29, 2014<br>(b)  **Expiration Date:** December 29, 2015<br>At 12:01 a.m. Standard Time both dates at the Principal Address stated in ITEM 1. |

**ITEM 3.  RETROACTIVE DATES**

| | | |
|---|---|---|
| A) | Professional Liability: | 10/1/2011 |
| B) | General Liability: | 10/1/2011 |
| C) | Employee Benefits Liability: | 10/1/2011 |
| D) | Evacuation Expense Reimbursement : | 10/1/2011 |
| E) | Public Relations Expense Reimbursement : | 10/1/2011 |
| F) | Resident Loss of Property Reimbursement : | 10/1/2011 |

**ITEM 4.  LIMITS OF LIABILITY**

**A)  Professional Liability**

| | |
|---|---|
| Each Claim Limit of Liability: | $1,000,000 |
| Aggregate Limit of Liability: | $3,000,000 |
| | |
| Each Claim Self Insured Retention: | $500,000 |
| Aggregate Self Insured Retention: | N/A |

**B)  General Liability**

| | |
|---|---|
| Each Claim Limit of Liability: | $1,000,000 |
| Aggregate Limit of Liability: | $3,000,000 |
|    Products Completed Ops Limit: | ☒  Included |
|    Personal Injury and Advertising Injury Limit: | ☒  Included |
|    Fire Damage Each Claim: | $100,000 |
|    Fire Damage Aggregate: | $100,000 |
|    Medical Expense for Bodily Injury caused<br>       by accident Each Person: | $10,000 |

|   | Medical Expense for Bodily Injury caused by accident Aggregate | $25,000 |
|---|---|---|
|   | Each Claim Self Insured Retention: | $500,000 |
|   | Aggregate Self Insured Retention: | N/A |
|   | Medical Expenses Self Insured Retention: | Nil |

**C) Employee Benefits Liability**

| Each Claim Limit of Liability: | $1,000,000 |
|---|---|
| Aggregate Limit of Liability: | $3,000,000 |

| Each Claim Self Insured Retention: | $1,000 |
|---|---|
| Aggregate Self Insured Retention: | N/A |

**D) Evacuation Expense Reimbursement**

| Each Claim Limit of Liability: | $25,000 |
|---|---|
| Aggregate Limit of Liability: | $25,000 |

| Each Claim Self Insured Retention: | $5,000 |
|---|---|
| Aggregate Self Insured Retention: | N/A |

**E) Public Relations Expense Reimbursement**

| Each Claim Limit of Liability: | $25,000 |
|---|---|
| Aggregate Limit of Liability: | $25,000 |

| Each Claim Self Insured Retention: | $5,000 |
|---|---|
| Aggregate Self Insured Retention: | N/A |

**F) Resident Loss of Property Reimbursement**

| Each Claim Limit of Liability: | $5,000 |
|---|---|
| Aggregate Limit of Liability: | $25,000 |

| Each Claim Self Insured Retention: | $0 |
|---|---|
| Aggregate Self Insured Retention: | N/A |

**ITEM 5. PREMIUM:**

*Compliance with all surplus lines placement requirements, including stamping the Policy and collection and payment of surplus lines taxes, is the responsibility of the broker.*

Premium:  REDACTED

Total Amount Due:  REDACTED

*See Invoice for the date Premium is due and payable. Failure to pay the premium in full may result in voidance of coverage.*

☒ This amount is net of commission – no percentage of the premium will be paid to the broker.
☐ This amount includes commission – a percentage of the premium will be paid to the broker.

**ITEM 6. NOTICES UNDER SECTION IV OF THE POLICY SHOULD BE ADRESSED TO:**

| | All other notices under the Policy should be addressed to: |
|---|---|
| **Vice President of Claims** | **Underwriting Department** |
| **IronHealth** | **IronHealth** |
| **175 Powder Forest Drive, 1st Floor** | **175 Powder Forest Drive, 1st Floor** |
| **Weatogue, CT 06089** | **Weatogue, CT 06089** |

**ITEM 7. POLICY FORM & ENDORSEMENTS ATTACHED AT ISSUANCE**

LTC.COV.002 (6.12 Ed.) Primary Policy

**ENDORSEMENTS ATTACHED AT ISSUANCE**

1. OFAC.END.001 (11.14 ed.) OFAC Compliance Notice
2. LTC.P.004 (5.13 ed.) Separate Limit for Administrators - CM
3. LTC.P.009 (3.09 Ed.) Schedule of Locations with Retroactive Dates
4. LTC.P.012 (3.09 Ed.) Amend Definition of Named Insured
5. LTC.P.013 (6.08 Ed.) Disinfection Event Expense Reimbursement
6. LTC.P.019 (5.08 Ed.) Additional Insured Endorsement
7. LTC.P.040 (10.08 Ed.) PL-GL Limits per Location, with Single Aggregate Limit
8. LTC.P.045 (12.08 Ed.) Divested Locations Endorsement
9. LTC.END.140 (12.11 ed.) Increase Limits and Split Retro Dates for Specific Named Insured(s) - P
10. LTC.END.179 (5.14 ed.) Amend Limits for Specific Named Insured(s)

**These Declarations, the completed signed Application and the Policy with Endorsements shall constitute the contract between the Insured and the Underwriter.**

Ironshore Specialty Insurance Company

BY: _____                                **DATE:** January 28, 2015

**Authorized Signature**

**IRONSHORE®**
*your safe harbour*

## IRONSHORE SPECIALTY INSURANCE COMPANY

**Mailing Address:**
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Insured Name:** 4 West Holdings, Inc.
**Policy Number:** 001163303

# LONG TERM CARE ORGANIZATIONS PROFESSIONAL LIABILITY, GENERAL LIABILITY AND EMPLOYEE BENEFITS LIABILITY POLICY

PORTIONS OF THIS POLICY ARE "CLAIMS MADE," APPLYING ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER DURING THE POLICY PERIOD.  PLEASE READ THIS POLICY CAREFULLY.

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the insurance company identified in the Declarations to this Policy (the "Insurer"), and subject to all of the terms and conditions of this Policy (including all endorsements hereto), the Insurer and the **Insured** agree as follows:

**I.      INSURING AGREEMENTS**

**(A)      Claims Made Professional Liability Insurance:**

The Insurer will pay on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for a **Professional Services Wrongful Act** happening on or after the **Retroactive Date,** provided that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable **Extended Reporting Period**, and subject to the applicable Limit of Liability.

**(B)      Claims Made General Liability Insurance; Medical Expense Payments:**

(1)      The Insurer will pay on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** alleging **Bodily Injury**, **Property Damage**, **Advertising Injury** or **Personal Injury** happening on or after the **Retroactive Date,** provided that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable **Extended Reporting Period**, and subject to the applicable Limit of Liability.

(2)      The Insurer will pay on behalf of the **Insured Medical Expenses** which are actually incurred, and for which the claimant is financially responsible, for **Bodily Injury** caused by an accident:

(a)      on premises owned or rented by the **Named Insured**; or

(b)      on ways adjacent to premises owned or rented by the **Named Insured**; or

(c)      because of the operations of the **Named Insured**;

*provided* that:

(i)      such accident takes place in the coverage territory and during the **Policy Period**;

      (ii)    **Medical Expenses** are incurred and reported to the Insurer within one year of the date of the accident; and

      (iii)    the injured person submits to examination, as often as required by the Insurer, by physicians of the Insurer's choice and at the expense of the Insurer.

**(C)**    **Claims Made Employee Benefits Liability Insurance:**

The Insurer will pay on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for an **Employee Benefits Wrongful Act** happening on or after the **Retroactive Date,** provided that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable **Extended Reporting Period**, and subject to the applicable Limit of Liability.

**(D)**    **Evacuation Expense Reimbursement Insurance:**

Upon satisfactory proof of payment by the **Named Insured**, the Insurer will reimburse the **Named Insured** up to the amount set forth in ITEM 4(D) of the Declarations for **Evacuation Expense** actually paid by the **Named Insured** during the **Policy Period** in connection with an **Evacuation** occurring after the **Retroactive Date**.

**(E)**    **Public Relations Expense Reimbursement Insurance:**

Upon satisfactory proof of payment by the **Named Insured**, the Insurer will reimburse the **Named Insured** up to the amount set forth in ITEM 4(E) of the Declarations for **Public Relations Expense** actually paid by the **Named Insured** during the **Policy Period** in connection with a **Public Relations Event** occurring after the **Retroactive Date,** provided that the Insurer will have no liability whatsoever for fines, penalties, assessments of costs or other financial awards associated with any such **Public Relations Event**.

**(F)**    **Resident Loss of Property Reimbursement Insurance:**

Upon satisfactory proof of payment by the **Named Insured**, the Insurer will reimburse the **Named Insured** up to the amount set forth in ITEM 4(F) of the Declarations for **Resident Loss of Property** actually paid by the **Named Insured** during the **Policy Period.**

**(G)**    **Defense and Supplementary Payments:**

The Insurer has the right and duty to defend any **Claim** that is covered by INSURING AGREEMENTS (A), (B), and (C) of this Policy, even if any of the allegations of such **Claim** are groundless, false or fraudulent.  In addition to the applicable Limit of Liability for INSURING AGREEMENTS (A), (B), and (C), the Insurer will pay **Defense Expenses** and will:

    (1)    pay the premium on any bond to release attachments for an amount not in excess of the Limit of Liability for INSURING AGREEMENTS (A), (B), and (C) of this Policy and the premium on any appeal bond required in any defended suit, provided, that the Insurer will not be obligated to apply for or furnish any such bond;

    (2)    pay all costs taxed against the **Insured** in any such suit;

    (3)    provide a legal defense and pay **Defense Expenses** for any arbitration, mediation or other alternative dispute proceeding if:

      (a)    the dispute at issue is a **Claim** covered by this Policy, and

      (b)    the **Insured** provides notice of the proceeding as required by GENERAL CONDITION (A)(3) of this Policy; and

    (4)    pay reasonable expenses, plus loss of earnings due to time off from work, incurred by an **Insured** as a result of being a defendant or co-defendant in a **Claim** or at the Insurer's request, but not to exceed:

(a)    $500 per day per **Insured**; and

(b)    $12,500 per **Claim**.

**II.    DEFINITIONS APPLICABLE TO ALL COVERAGE PARTS**

(A)    "**Administration**" as used in connection with **Employee Benefits Programs** shall mean the following acts if authorized by the **Named Insured**:

(1)    giving counsel to **Employees** with respect to **Employee Benefits Programs**;

(2)    interpreting the **Employee Benefits Programs**;

(3)    handling records and processing of **Claims** in connection with the **Employee Benefits Programs**; and

(4)    effecting enrollment, termination or cancellation of **Employees** under **Employee Benefits Programs**.

(B)    "**Advertising Injury**" means injury arising out of an **Advertising Injury Offense**,

(C)    "**Advertising Injury Offense**" means one or more of the following offenses:

(1)    oral or written publication of material that slanders or libels a person or an organization or disparages a person's or an organization's goods, products or services;

(2)    oral or written publication of material that violates a person's right of privacy;

(3)    misappropriation of advertising ideas or style of doing business; or

(4)    false, incorrect or misleading publication by the **Named Insured** concerning the type, scope or quality of **Medical Services** offered by the **Named Insured**, alleged in connection with **Bodily Injury**.

(D)    "**Application**" means the application for insurance attached to and forming part of this Policy, including any materials submitted and statements made in connection therewith, all of which are on file with the Insurer and are a part of this Policy, as if physically attached. If the **Application** uses terms or phrases that differ from terms defined in this Policy, no inconsistency between any terms or phrase used in the **Application** and any term defined in this Policy will waive or change any of the terms, conditions and limitations of this Policy.

(E)    "**Beauticians and Barbers Professional Services**" means those services rendered by any **Covered Beautician/Barber** in his or her capacity as such.

(F)    "**Beauticians and Barbers Professional Services Wrongful Act**" means any actual or alleged act, error or omission, or series of acts, errors or omissions, by a **Covered Beautician/Barber** in the performance or failure to perform **Beauticians and Barbers Professional Services** that results in **Bodily Injury;**

(G)    "**Bodily Injury**" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; mental anguish; and mental injury.

(H)    "**Claim**" means a written demand received by an **Insured** for monetary damages resulting from a **Wrongful Act** or an **Occurrence**.

(I)    "**Covered Beautician/Barber**" means any licensed beautician or barber who is not an **Employee** of the **Named Insured** but who is invited by the **Named Insured** onto the **Named Insured's** premises to perform **Beauticians and Barbers Professional Services**, but only while performing such **Beauticians and Barbers Professional Services** at the request of the **Named Insured** on the **Named Insured's** premises;

(J)    "**Covered Contract**" means any lease of premises; sidetrack agreement; elevator maintenance agreement; easement of license agreement; obligation to indemnify a municipality if the obligation is required by ordinance; contract or agreement under which the **Named Insured** assumes the tort liability of a municipality to pay damages

for **Bodily Injury** or **Property Damage** covered by this Policy that is sustained by others.

(K)    "**Defense Expenses**" means the reasonable fees of attorneys, experts and consultants costs and expenses incurred in the investigation, adjustment, defense and or appeal of a **Claim** with the approval or at the direction of the Insurer; provided that **Defense Expenses** shall not include:

    (1)    remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of any **Insured**;

    (2)    any amounts incurred in defense of a **Claim** for which any other insurer has a duty to defend, regardless whether such other insurer undertakes such duty; or

    (3)    any benefits under an **Employee Benefits Program**.

(L)    "**Employee**" means any person who has an assigned work schedule for and is either (i) on the regular payroll of the **Named Insured**, with federal and state taxes withheld, or (ii) a person employed by a labor leasing firm or self-employed, and leased by the **Named Insured** under a written agreement with such labor leasing firm or person to perform duties at the **Named Insured's** location and under the direction of the **Named Insured**. Other than a person described in clause (ii) above, independent contractors are not **Employees**. An **Employee's** status as an **Insured** shall be determined as of the date of the **Wrongful Act** upon which a **Claim** involving the **Employee** is based.

(M)    "**Employee Benefits Programs**" means any group life insurance, group accident and health insurance, profit sharing plans, pension plans, **Employee** stock subscription plans, workers' compensation, unemployment insurance, social security and disability benefits insurance or any other similar plan under the **Administration** of the **Named Insured**.

(N)    "**Employee Benefits Wrongful Act**" means any actual or alleged act, error or omission, or series of acts, errors or omissions, by any **Insured** in the **Administration** of an **Employee Benefits Program**.

(O)    "**Employment Practices**" means any of the following: breach of any employment contract; failure or refusal to hire or employ; dismissal, discharge, reduction in force, downsizing or termination of employment, whether actual or constructive; demotion, reassignment, failure or refusal to promote, or deprivation of career opportunity; discipline of **Employees**; evaluation of **Employees**; discrimination or harassment of any kind or on any basis including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy or religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment; humiliation or defamation of any present or former **Employee** or applicant for employment; retaliatory treatment against an **Employee** arising out of the **Employee's** attempted or actual exercise of the **Employee's** rights under the law; employment-related misrepresentations; or failure to implement appropriate workplace or employment policies or procedures.

(P)    "**Evacuation**" means the removal from one or more of the **Named Insured's** facilities to any other location of a majority of the residents of such facility(ies) as a result of any natural or man-made occurrence that, in the reasonable judgment of the **Named Insured's** management, causes or could potentially cause such facility(ies) to be unsafe for such residents.

(Q)    "**Evacuation Expense**" means reasonable costs incurred in connection with an **Evacuation**, including costs associated with transporting and lodging residents who have been evacuated. **Evacuation Expense** does not include any remuneration, salaries, overhead or benefit expenses of the **Named Insured**.

(R)    "**Extended Reporting Period**" means the period of time after the **Policy Period** for reporting any **Claim** for a **Wrongful Act** that happened after the **Retroactive Date** and before the termination of the **Policy Period**.

(S)    "**Fire Damage**" means **Property Damage** resulting from a **Hostile Fire**.

(T)    "**First Named Insured**" means the entity designated as such in ITEM 1 of the Declarations.

(U)    "**HIPAA Violation**" means any proceeding brought by a government entity (other than proceedings in the ordinary course of the **Named Insured's** business) alleging a violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

(V)    "**Hostile Fire**" means a fire which becomes uncontrollable or breaks out from where it was intended to be contained; provided, that **Hostile Fire** does not include any fire that originates at any site operating as a waste disposal facility or waste storage facility.

(W)    "**Insured**" means any of the following:

    (1)    the **Named Insured**;

    (2)    any **Employee** or **Volunteer**; but only when such **Employee** or **Volunteer** is acting within the capacity and scope of his or her duties as such for the **Named Insured**;

    (3)    any **Insured Medical Practitioner**;

    (4)    any medical director of the **Named Insured**, whether or not such person is an **Employee**;

    (5)    any member of a duly authorized board or any committee of the **Named Insured**; any person communicating information to the **Named Insured** or its medical or professional staff for the purpose of aiding in the evaluation of **Professional Services** or the qualifications, professional competence, fitness, or character of an applicant for membership or privileges on such medical or professional staff or for purposes of initiating corrective action; or any person charged with the duty of acting as a hearing officer or an agent of a judicial review committee or executing directives of any such board or committee but, in each case, only when such person is acting within the capacity and scope of his or her duties to such board or committee;

    (6)    any **Covered Beautician/Barber**;

    (7)    solely with respect to and limited to coverage afforded under INSURING AGREEMENT (A), the lawful spouses of individual **Insureds** and, in the event of the death, incapacity, or bankruptcy of an individual **Insured** the estates, heirs, legal representatives or assigns of such individual **Insured**;

    (8)    any person enrolled as a student in a formal training program offered by the **Named Insured** or a subsidiary or an affiliate in connection with the **Named Insured's** on-site operation as a health care organization or provider but only for such person's legal liability arising from the performance of, or failure to perform, duties relating to the on-site training program in which he or she is enrolled;

    (9)    any driver or operator of **Mobile Equipment** but only when operating **Mobile Equipment** at the direction and with the permission of the **Named Insured**; and

    (10)   Solely with respect to, and limited to, coverage afforded under INSURING AGREEMENT (B), any person or organization for whom the **Named Insured** is performing operations when the **Named Insured** and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an "additional insured" on this Policy; *provided*, that each such person or organization is being afforded coverage under this Policy for liability incurred *solely* as a result of the acts, errors or omissions of the original **Insured**; and *provided further*, that no coverage will be available under this Policy for any **Claim** based on or arising out of any actual or alleged independent or direct liability of any such person or organization.

(X)    "**Insured Medical Practitioner**" means any clinical professional including, without limitation, any physician, surgeon, intern, extern, resident, certified registered nurse anesthetist, osteopathic physician and surgeon, podiatrist and dentist who, on the date of the **Wrongful Act** giving rise to any **Claim** covered by this Policy, was:

    (1)    independently professionally licensed by the State in which the **Insured Medical Practitioner** is providing services for or on behalf of the **Named Insured**; and

    (2)    an **Employee**.

(Y)    "**Loss**" means **Public Relations Expenses**, **Evacuation Expenses**, **Medical Expenses** for **Bodily Injury** caused by an

accident, and any damages, settlements, judgments or other amounts (including punitive or exemplary damages where insurable by law) in excess of the applicable Retention, if any, stated in ITEM 4 of the Declarations and not exceeding the applicable Limit of Liability stated in ITEM 4 of the Declarations which an **Insured** is legally obligated to pay as a result of a **Claim**. **Loss** shall not include:

    (1)    **Defense Expenses**;

    (2)    the multiple portion of any multiplied damage award;

    (3)    fines, penalties, sanctions, fees, government payments or taxes; except that the **Insurer** will pay fines, penalties, sanctions, fees, government payments or taxes as result of any **HIPAA Violation** up to the amount set forth in ITEM 4E of the Declarations;

    (4)    amounts owed to any provider of **Medical Services** under any contract;

    (5)    restitution, return or disgorgement of fees, profits, charges for products or services rendered, capitation payments, premium or any other funds allegedly wrongfully held or obtained;

    (6)    benefits under an **Employee Benefits Plan**;

    (7)    relief or redress in any form other than monetary compensation or monetary damages, including without limitation the cost of complying with any injunctive, declaratory or administrative relief; or

    (8)    matters which are uninsurable under applicable law.

(Z)    "**Medical Expenses**" means reasonable payments for:

    (1)    first aid administered at the time of an accident;

    (2)    necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3)    necessary ambulance, hospital, professional medical and nursing, and funeral services.

(AA)    "**Medical Services**" means health care, medical care, or treatment provided to any individual, including without limitation any of the following: medical (other than surgical), dental, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional health care; the furnishing or dispensing of medications, drugs, blood, blood products, or medical (other than surgical), dental, or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies.

(BB)    "**Mobile Equipment**" means any of the following types of land vehicles, including any attached machinery or equipment:

    (1)    bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    (2)    vehicles maintained for use solely on or next to premises owned or rented by an **Insured**;

    (3)    vehicles that travel on crawler treads;

    (4)    vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (a)    power cranes, shovels, loaders, diggers or drills, or

        (b)    road construction or resurfacing equipment such as graders, scrapers or rollers;

    (5)    vehicles not described in clauses (1)-(4) above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (a)    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (b)     cherry pickers and similar devices used to raise or lower workers; and

   (6)     vehicles not described in clauses (1)-(4) above maintained primarily for purposes other than the transportation of persons or cargos. **Mobile Equipment** does not include self-propelled vehicles with the following types of permanently attached equipment:

        (a)     equipment designed primarily for:

             (i)     snow removal;

             (ii)    road maintenance but not construction or resurfacing; or

             (iii)   street cleaning;

        (b)     cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (c)     air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

(CC)   **"Mold"** means mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description whatsoever.

(DD)   **"Named Insured"** means the **First Named Insured** and each other entity designated as a **Named Insured** in ITEM 1 of the Declarations.

(EE)   **"Occurrence"** means an **Advertising Injury Offense**, a **Personal Injury Offense**, and any accident, including continuous or repeated exposure to the same harmful conditions, which results in injury or damage neither expected nor intended by the **Insured**.

(FF)   **"Personal Injury"** means injury, other than **Bodily Injury**, arising out of one or more **Personal Injury Offense(s)**.

(GG)   **"Personal Injury Offense"** means any of the following offenses:

   (1)     false arrest, detention or imprisonment;

   (2)     malicious prosecution;

   (3)     the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   (4)     oral or written publication of material that slanders or libels a person or an organization or disparages a person's or an organization's goods, products or services; or

   (5)     oral or written publication of material that violates a person's right of privacy.

(HH)   **"Policy Period"** means the period from the Inception Date of this Policy stated in ITEM 2(a) of the Declarations to the Expiration Date of this Policy stated in ITEM 2(b) of the Declarations or to any earlier cancellation date of this Policy.

(II)   **"Pollutant"** means smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, medical waste, waste materials (including materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, pollutants or contaminants. **Pollutant** does not include smoke, fumes, vapor or soot emanating from equipment used to heat or cool a building owned or operated by the **Named Insured**.

(JJ)   **"Professional Services"** means:

   (1)     **Medical Services**;

   (2)     the activities of an **Insured** as a member of a formal accreditation, standards review or similar

           professional board or committee, including executing the directives of such board or committee;

    (3)    reviewing the quality of **Medical Services** or providing quality assurance on behalf of the **Named Insured**; or

    (4)    **Beauticians and Barbers Professional Services.**

(KK)    **"Professional Services Wrongful Act"** means:

    (1)    any actual or alleged act, error or omission, or series of acts, errors or omissions, by an **Insured** in rendering, or failing to render, **Professional Services** that results in **Bodily Injury**;

    (2)    any **Beauticians and Barbers Professional Services Wrongful Act**; and

    (3)    any actual or alleged violation by an **Insured** of any **Rights of Residents,** that results in **Bodily Injury**.

(LL)    **"Property Damage"** means:

    (1)    physical injury to tangible property, including all resulting loss of use of that property; provided, that such loss of use shall be deemed to have occurred at the time of the physical injury that caused it; or

    (2)    loss of use of tangible property that is not physically injured; provided, that such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

(MM)    **"Public Relations Expense"** means reasonable fees and costs incurred in the investigation, mitigation and/or defense of an actual or alleged **Public Relations Event**. **Public Relations Expense** includes costs (a) of attorneys, experts and consultants, including third-party media consultants; (b) to notify third parties directly affected by such **Public Relations Event**; (c) associated with credit monitoring services; and (d) incurred in the management of public relations with respect to such **Public Relations Event. Public Relations Expense** does not include any remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of the **Named Insured**.

(NN)    **"Public Relations Event"** means:

    (1)    any **HIPAA Violation**, or any other failure to maintain the confidentiality of information regarding **Medical Services** or information obtained in the provision of **Professional Services,** or unauthorized release or use of such information; or

    (2)    any criminal investigation, criminal complaint, indictment, administrative hearing or licensing or other agency proceeding (other than proceedings in the normal course of **Named Insured's** business), in any such case relating to the alleged violation or infringement of one or more state or federal statutes or regulations regarding:

        (a)    elder abuse;

        (b)    resident privacy, including the handling of protected health information;

        (c)    hiring practices and reference checking with respect to potential employees; and

        (d)    any other similar law or regulation applicable to operations of the **Named Insured** and intended to protect the rights or safety of elderly persons and persons in long-term care facilities.

(OO)    **"Related Claims"** means:

    (1)    **Claims** for **Wrongful Acts**, and

    (2)    **Claims** for **Bodily Injury**, **Property Damage**, **Advertising Injury** or **Personal Injury** caused by a **Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events, whether related logically, causally, or in any other way, in any combination, whether or not involving more than one policy, practice, procedure or product, including any course of treatment, and whether or not deemed a continuous tort.

(PP)    **"Resident"** means any person being cared for at a facility of the **Named Insured**.

(QQ)    **"Resident Loss of Property"** means any loss of, or damage to, personal property of a resident occurring at a facility of the **Named Insured**.

(RR)    **"Retroactive Date"** means the applicable date set forth in ITEM 3 of the Declarations.

(SS)    **"Rights of Residents"** means:

   (1)    any right granted to a nursing home **Resident** under any state law regulating the **Named Insured's** business as a residential health care facility; or

   (2)    rights of **Residents** as set forth in the United States Department of Health and Welfare regulations governing participation of Intermediate Care Facilities or Skilled Nursing Facilities, regardless of whether the **Named Insured's** facility is subject to such regulations.

(TT)    **"Volunteer"** means a person who provides his or her services or labor to the **Named Insured**, and whose activities are supervised and directed by the **Named Insured**, but who does not have a contract to provide and is not compensated for such services and labor. No **Insured Medical Practitioner**, **Employee** or staff physician shall be considered a **Volunteer**.

(UU)    **'Wrongful Act"** means any **Professional Services Wrongful Act** or **Employee Benefits Wrongful Act**.

**III.    EXCLUSIONS**

(A)    **Exclusions Applicable to INSURING AGREEMENT (A):**

   In addition to the EXCLUSIONS listed under (D) below, no coverage will be available under INSURING AGREEMENT (A), and the Insurer will not pay any **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

   (1)    discrimination of any kind on any basis, including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy, religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment except to the extent that such discrimination relates to the rendering of, or failure to render, **Professional Services**;

   (2)    **Property Damage**;

   (3)    **Bodily Injury** expected or intended from the standpoint of any **Insured**; except this EXCLUSION (A)(3) will not apply

      (a)    to **Bodily Injury** resulting from use of reasonable force to protect persons or property, and

      (b)    in the event of any **Claim** for elder abuse, to

         (i)    any **Insured** who did not personally participate in such elder abuse, and

         (ii)    the vicarious liability of the **Named Insured** for such elder abuse.

   (4)    **Advertising Injury** or **Personal Injury**, except (a) to the extent that such injury relates to the rendering of, or failure to render, **Professional Services**, and (b) with respect to any **Advertising Injury Offense** described in DEFINITION (C)(4).

   (5)    **Employee Benefits Wrongful Acts**;

(6)    rendering of, or failure to render, **Medical Services** by any **Insured** while the **Insured's** license to practice is or was not active; or

(7)    violation of the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, all as may be amended, or any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder; except this EXCLUSION (A)(7) will not apply to any **Claim** arising out of the rendering of, or failure to render, **Medical Services**, which is otherwise covered under INSURING AGREEMENT (A) of this Policy and for which reimbursement for such services was received from health care plans covered by such statutes, rules or regulations.

(B)    **Exclusions Applicable to INSURING AGREEMENT (B):**

In addition to the EXCLUSIONS listed under (D) below, no coverage will be available under INSURING AGREEMENT (B), and the Insurer will not pay any **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)    **Professional Services Wrongful Act**;

(2)    discrimination of any kind on any basis, including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy, religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment;

(3)    **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** expected or intended from the standpoint of any **Insured**; except for **Bodily Injury** resulting from use of reasonable force to protect persons or property;

(4)    **Personal Injury** or **Advertising Injury** arising out of oral or written publication of material:

    (a)    if done by or at the direction of an **Insured** with knowledge of its falsity; or

    (b)    whose first publication took place before the Inception Date set forth in ITEM 2 of the Declarations;

(5)    **Advertising Injury** arising out of any false, incorrect or misleading description of the price of goods, products or services;

(6)    **Employee Benefits Wrongful Acts**;

(7)    **Bodily Injury** or **Property Damage** arising out of:

    (a)    the ownership, maintenance, use, operation or entrustment to others of any aircraft, auto, watercraft, motor vehicle or semi-trailer or the loading or unloading thereof; except to the extent such injury arises from the loading or unloading of residents or relates to the maintenance or use of non-owned aircraft, watercraft or motor vehicles but only as excess cover over any other insurance, whether collectible or not;

    (b)    the transportation of **Mobile Equipment** by, in or on an auto owned or operated by, or rented or loaned to, any **Insured**;

    (c)    the use of **Mobile Equipment** in, or while in practice or preparation for, any prearranged racing, speed, demolition or stunt activity; or

    (d)    any consequence, direct or indirect, of war, invasion, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, strike, riot or civil insurrection;

except that EXCLUSION (B)(7)(a) above does not apply to golf carts or similar vehicles owned or leased by

the **Named Insured**, and operated by any **Employee** or **Volunteer** of the **Named Insured** (i) in the ordinary course of the **Named Insured's** business as a retirement facility or community, and (ii) solely on premises owned or leased by the **Named Insured**;

(8)  **Property Damage** to:

    (a)    property the **Insured** owns, rents or occupies;

    (b)    premises sold, given away or abandoned by the **Named Insured**, if the **Property Damage** arises out of any part of those premises;

    (c)    property loaned to the **Insured**;

    (d)    personal property in the care, custody or control of the **Insured**, subject, however, to coverage afforded under INSURING AGREEMENT (F);

    (e)    that particular part of real property on which the **Insured**, or any contractor or subcontractor working directly or indirectly on the **Insured's** behalf, is performing operations, if the **Property Damage** arises out of those operations;

    (f)    property which is being transported by the **Insured** by automobile, **Mobile Equipment** or team, including the loading and unloading thereof; or

    (g)    a delay or failure by an **Insured** or anyone acting on the **Named Insured's** behalf to perform a contract or an agreement in accordance with its terms;

except that:

EXCLUSION (B)(8)(a) above does not apply to **Fire Damage**, subject to the applicable Limit of Liability set forth in ITEM 4 of the Declarations; and

EXCLUSIONS (B)(8)(c), (d) and (e) above do not apply to liability assumed under a sidetrack agreement.

(9)  injury or damage arising in whole or in part, either directly or indirectly, out of asbestos, regardless whether the asbestos is:

    (a)    airborne as a fiber or particle;

    (b)    contained in a product;

    (c)    carried or transmitted on clothing or by any other means; or

    (d)    contained in or a part of:

        (i)    any building;

        (ii)    any building material;

        (iii)    any insulation product; or

        (iv)    any component part of any building, building material or insulation product;

(10)  (a)    exposure to, or the manifestation, release, dispersal, seepage, migration, discharge, appearance, presence, reproduction or growth of, **Mold**;

    (b)    cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize, rehabilitate, or in any other way respond to or assess the effect(s) of **Mold**;

    (c)    cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to **Mold**;

except this EXCLUSION (B)(10) will not apply to any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the **Insured's** use of **Mold** in connection with the rendering of **Medical Services**, including medical research activities;

(11)   (a)     exposure to, or generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth of, treatment, removal or disposal of, any **Pollutant**, except where such exposure, generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth, treatment, removal or disposal was caused by an unintentional fire or any heat, smoke or fumes issuing from such unintentional fire;

      (b)     fee, cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize or rehabilitate any **Pollutant**;

      (c)     fee, cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to any Pollutant;

except this EXCLUSION (B)(11) will not apply to any **Claim** for **Bodily Injury** or **Property Damage** caused by heat, smoke or fumes from a **Hostile Fire**;

(12)     violation of the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, all as may be amended, or any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder; except this EXCLUSION (B)(12) will not apply to a **Claim** arising out of the rendering of, or failure to render, **Medical Services**, which is otherwise covered under INSURING AGREEMENT (A) of this Policy and for which reimbursement for such services was received from health care plans covered by such statutes, rules or regulations;

(13)     nuclear reaction, nuclear radiation, radioactive contamination, or radioactive substance; or

(14)     **Bodily Injury** sustained by:

      (a)     any **Insured** other than a **Volunteer**;

      (b)     any person hired to do work for or on behalf of any **Insured** or tenant of any **Insured**;

      (c)     any person injured on that part of premises owned or rented by the **Named Insured** that the person normally occupies;

      (d)     any person injured while engaging in athletic activities; or

      (e)     any person to the extent that benefits for the injury are payable or must be provided by worker's compensation, disability, government-sponsored health insurance (including, without limitation, Medicare and Medicaid) or any similar health insurance plan or coverage; provided that clause (e) shall not be construed to reduce or eliminate the Insurer's obligation to satisfy valid government liens via payment directly to the applicable government agency;

except this EXCLUSION (B)(14) shall apply only to the coverage afforded under clause (2) of INSURING AGREEMENT (B).

(C)     **Exclusions Applicable to INSURING AGREEMENT (C):**

In addition to the Exclusions listed in EXCLUSION (D) below, no coverage will be available under INSURING AGREEMENT (C), and the Insurer will not pay any **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)    **Bodily Injury** or **Property Damage**;

(2)    failure of performance by any insurer;

(3)    failure of securities or other investments to perform as represented or advice given to an **Employee** to participate or not to participate in stock subscription or other benefit programs; provided, that for purposes of this EXCLUSION (C)(3), "security" means a security of any nature whatsoever including, without limitation, stocks, shares, bonds, debentures, options, derivatives, partnership interests, limited liability company interests, any other form of debt or equity instrument and any other forms of ownership interest;

(4)    insufficiency of funds to meet any obligations of **Employee Benefits Programs**;

(5)    discrimination of any kind on any basis, including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, ancestry, physical or mental handicaps, age, sexual preference, pregnancy, religion or other status that is protected under any applicable federal, state or local statute or ordinance affecting any present or former **Employee** or applicant for employment;

(6)    **Professional Services Wrongful Acts**; or

(7)    violation of the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, all as may be amended, or any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder.

(D)    **Exclusions Applicable to All INSURING AGREEMENTS:**

Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Insurer will not pay **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

(1)    **Wrongful Act** or **Occurrence** that happened before the **Retroactive Date** if applicable, or after the **Retroactive Date** if, on the Inception Date of this Policy, the **Insured** knew, had been told, should have known or had notified a prior insurer or administrator of any other risk transfer instrument that such **Wrongful Act** or **Occurrence** would or could result in a **Claim**; *provided, however*, that if this Policy is a renewal of one or more policies previously issued by the Insurer to the **Named Insured**, and the coverage provided by the Insurer to the **Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this EXCLUSION (D)(1) to the Inception Date will be deemed to refer instead to the inception date of the first policy under which the Insurer began to provide the **Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal;

(2)    violation of any federal, state or local antitrust, restraint of trade, unfair competition, or price-fixing law, or any rules or regulations promulgated thereunder, or any involvement in any agreement or conspiracy to restrain trade, except for any **Claim** otherwise covered under INSURING AGREEMENT (A) arising out of the rendering of, or failure to render, **Professional Services**;

(3)    dishonest, fraudulent, criminal or intentionally malicious act, error or omission by an **Insured**; any willful violation of law, statute, rule or regulation by an **Insured**; or the gaining of any profit, remuneration or advantage by any **Insured** to which such **Insured** was not legally entitled, including, but not limited to, health care fraud; provided, however, that no such act of one **Insured** will be imputed to any other **Insured** who was not aware of and did not participate in such act;

(4)    obligation for which the **Named Insured** or any other insurer may be liable under workers' compensation, unemployment compensation, disability benefits or any similar law;

(5)    obligation which an **Insured** has assumed under a written or oral contract or agreement; except this EXCLUSION (D)(5) will not apply to:

(a)     liability an **Insured** would have had in the absence of such contract or agreement; or

(b)     liability assumed by the **Named Insured** under a **Covered Contract**;

(6)     **Claim** made by or for the benefit of, or in the name or right of, one current or former **Insured** against another current or former **Insured**;

(7)     **Employment Practices**;

(8)     liability of any subsidiary as described in GENERAL CONDITION (F) or its **Insured Persons** acting in their capacity as such for any **Claim**, **Occurrence**, fact, circumstance, situation, transaction, event or **Wrongful Act** or series of **Claims**, **Occurrences**, facts, circumstances, situations, transactions, events or **Wrongful Acts** happening before the date such entity became a subsidiary;

(9)     unauthorized or illegal use or release of confidential, private or proprietary information; provided, that this EXCLUSION (D)(9) will not apply to any **Claim** for under INSURING AGREEMENT (E);

(10)    liability of any individual acting as an independent contractor for an **Insured**; except this EXCLUSION (D)(10) will not apply to (a) liability of any medical director of the **Named Insured**, and (b) any **Claim** based upon the actual or alleged vicarious liability of an **Insured;** or

(11)    infringement of any right of patent, service mark, trademark, copyright, title or slogan.

## IV.    GENERAL CONDITIONS

### (A)    Limits of Liability

(1)     Insuring Agreement A – Professional Liability

a.  The "Each Claim" amount stated in ITEM 4(A) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT A.

b.  The "Aggregate for all Claims" amount stated in ITEM 4(A) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT A.

(2)     Insuring Agreement B – General Liability; Medical Expenses

a.  The applicable "Each Claim" (or "Each Person") amount stated in ITEM 4(B) of the Declarations:

i.   With respect to General Liability, **Personal Injury** and **Advertising Injury,** will be the Insurer's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** under any such coverage for which this Policy provides coverage under INSURING AGREEMENT B;

ii.  With respect to **Fire Damage**, will be the Insurer's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** under such **Fire Damage** coverage for which this Policy provides coverage under INSURING AGREEMENT B; and

iii. With respect to **Medical Expenses** for **Bodily Injury** caused by an accident, will be the Insurer's maximum Limit of Liability for all such **Medical Expenses** per person resulting from an accident for which this Policy provides coverage under INSURING AGREEMENT B.

b.  The applicable "Aggregate" amount stated in ITEM 4(B) of the Declarations:

i.   With respect to General Liability, **Personal Injury** and **Advertising Injury,** will be the Insurer's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** under all such coverages for which this Policy provides coverage under INSURING AGREEMENT B;

ii.  With respect to **Fire Damage**, will be the Insurer's maximum Limit of Liability for all **Loss**

resulting from all **Claims** or **Related Claims** under such **Fire Damage** coverage for which this Policy provides coverage under INSURING AGREEMENT B; and

    iii.    With respect to **Medical Expenses** for **Bodily Injury** caused by an accident, will be the Insurer's maximum Limit of Liability for all such **Medical Expenses** resulting from all such accidents for which this Policy provides coverage under INSURING AGREEMENT B.

    c.    The amounts applicable to **Fire Damage** and **Medical Expenses** for **Bodily Injury** caused by an accident, as set forth above, shall be part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability set forth in clause b.1. above.

(3)    Insuring Agreement C – Employee Benefit Liability

    a.    The "Each Claim" amount stated in ITEM 4(C) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT C.

    b.    The "Aggregate for all Claims" amount stated in ITEM 4(C) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from all **Claims** or

        **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT C.

(4)    Insuring Agreement D – Evacuation Expense

    a.    The "Each Claim" amount stated in ITEM 4(D) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT D.

    b.    The "Aggregate for all Claims" amount stated in ITEM 4(D) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT D.

(5)    Insuring Agreement E – Public Relations Expense

    a.    The "Each Claim" amount stated in ITEM 4(E) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT E.

    b.    The "Aggregate for all Claims" amount stated in ITEM 4(E) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT E.

(6)    Insuring Agreement F – Resident Loss of Property

    a.    The "Each Claim" amount stated in ITEM 4(F) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT F.

    b.    The "Aggregate for all Claims" amount stated in ITEM 4(F) of the Declarations will be the Insurer's maximum Limit of Liability for all **Loss** resulting from all **Claims** or

        **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT F.

(7)    Each Limit of Liability described in paragraphs (1) through (6) above shall apply regardless of the time of payment by the Insurer, the number of persons or entities included within the definition of **"Insured"** set forth in DEFINITION W, or the number of claimants, and regardless of whether such **Claim** or **Related Claims** is/are first made during the **Policy Period** or during any **Extended Reporting Period.**

(8) The **Insured** shall be responsible for payment in full of the applicable deductible or self-insured retention stated in ITEM 4 of the Declarations, and the Insurer's obligation to pay **Loss** or **Defense Expenses** under this Policy shall be excess of such deductible or self-insured retention.  The applicable deductible or self-insured retention shall apply to each **Claim** or **Related Claims** (subject to the applicable aggregate deductible or self-insured retention amount, if any.  The Insurer shall have no obligation whatsoever, either to the **Insured** or any other person or entity, to pay all or any portion of the applicable deductible or self-insured retention on behalf of the **Insured**. The Insurer shall, however, at its sole discretion, have the right and option to do so, in which event the **Insured** will repay the Insurer any amounts so paid.

(9) All **Insureds** under this Policy share the Limit of Liability. In no event will the number of **Insureds** involved in a **Claim** or **Related Claims** increase the Limit of Liability.

(10) If any **Claim** made against the **Insured** gives rise to coverage both under this Policy and under any other policy or policies issued by the Insurer or any affiliate of the Insurer, the Insurer's and, if applicable, such affiliate's maximum aggregate limit of liability under all such policies for all **Loss** in respect of such **Claim** will not exceed the largest single available limit of liability under any such policy, including this Policy. In no event will more than one policy issued by the Insurer respond to a **Claim**.

(B)     **Related Claims Deemed Single Claim:**

All **Related Claims**, whenever made, shall be deemed to be a single **Claim**, regardless of:

(1)     the number of **Related Claims**;

(2)     the number or identity of claimants;

(3)     the number or identity of **Insureds** involved or against whom **Related Claims** have been or could be made;

(4)     whether the **Related Claims** are asserted in a class action or otherwise; and

(5)     the number and timing of the **Related Claims**, even if the **Related Claims** comprising such single **Claim** were made in more than one **Policy Period**.

All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with GENERAL CONDITION (C)(2) below, whichever is earlier.

(C)     **Reporting of Claims, Occurrences and Circumstances:**

(1) If, during the **Policy Period** or any **Extended Reporting Period**, any **Claim** for a **Wrongful Act** or an **Occurrence** is first made against any **Insured**, as a condition precedent to its right to any coverage under this Policy, the **Insured** shall give the Insurer written notice of such **Claim** as soon as practicable thereafter, but in no event later than:

(a)     sixty (60) days after the Expiration Date or earlier cancellation date of this Policy; or

(b)     the expiration of any **Extended Reporting Period**.

Timely and sufficient notice by one **Insured** of a **Claim** shall be deemed timely and sufficient notice for all **Insureds** involved in the **Claim**. Such notice shall give full particulars of the **Claim**, including, but not limited to, a description of the **Claim**; the identity of the resident, all potential claimants, the health care provider(s) and any **Insureds** involved; a description of the injury or damages alleged in the **Claim**; and information on the time, place and nature of the **Wrongful Ac(s)** or **Occurrence(s)** underlying the **Claim.**

(2) If during the **Policy Period** the **Insured** first becomes aware of any **Wrongful Act** or **Occurrence** that may subsequently give rise to a **Claim** and:

(a)     gives the Insurer written notice of such **Wrongful Act** or **Occurrence** with full particulars as soon

as practicable thereafter but in any event before the Expiration Date or earlier cancellation date of this Policy; and

(b)     requests coverage under this Policy for any **Claim** subsequently arising from such **Wrongful Act** or **Occurrence**;

then any **Claim** not otherwise excluded by this Policy subsequently made against the **Insured** arising out of such **Wrongful Act** or **Occurrence** shall be treated as if it had been first made during the **Policy Period**. Full particulars of the **Wrongful Act** or **Occurrence** shall include, but not be limited to, information on the time, place and nature of the **Wrongful Act** or **Occurrence**; the identity of the resident; all potential claimants and the health care provider(s) and any **Insureds** involved; the manner in which the **Insured** first became aware of such **Wrongful Act** or **Occurrence**; and the reasons the **Insured** believes the **Wrongful Act** or **Occurrence** is likely to result in a **Claim.**

(3)     Notwithstanding anything to the contrary contained in this Policy, if this Policy is a renewal of one or more policies previously issued by the Insurer to the **Named Insured,** and the coverage provided by the Insurer to the **Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in clause (2) above to the **Policy Period** will be deemed to refer to the period from (i) the inception date of the first policy under which the Insurer began to provide the **Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal, to (ii) the Expiration Date set forth in ITEM 2(b) of the Declarations.

(D)     **Defense and Settlement:**

(1)     No **Insured** shall, except at its own cost, incur any expense, make any payment, admit liability for, assume any obligation, or settle any **Claim** without the Insurer's written consent. With respect to any **Claim,** the Insurer will have the right to investigate, direct the defense, and conduct settlement negotiations it deems appropriate. The Insurer may make any settlement of any **Claim** which it deems appropriate.

(2)     The Insurer will have no obligation to pay **Loss** or **Defense Expenses,** or continue to direct the defense of any **Insured,** after the Limit of Liability has been exhausted by the payment of **Loss**. If the Limit of Liability is exhausted by the payment of **Loss,** the premium for this Policy will be fully earned.

(3)     If both **Loss** covered by this Policy and **Loss** not covered by this Policy are incurred, either because a **Claim** made against the **Insureds** includes both covered and uncovered matters, or because a **Claim** is made against both **Insureds** and others not included within the definition of "**Insured**" set forth in DEFINITION W above, the **Insured Entity**, the **Insured Persons** and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts. The Insurer's obligation to pay **Loss** under this Policy shall relate only to those sums allocated to the **Insureds**. In making such determination, the parties shall take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by the **Insured Persons**, the **Insured Entity** and others. In the event that the Insurer and the **Insureds** do not reach an agreement with respect to an allocation, then the Insurer shall be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

(E)     **Territory:**

This policy applies to **Wrongful Acts** or **Occurrences** taking place anywhere in the world. **Claim** or suit must be made against an **Insured**, however, in the United States of America, including its territories or possessions, Puerto Rico, or Canada.

(F)     **Mergers, Acquisitions or Newly Created Entities:**

If, during the **Policy Period,** the **Named Insured** acquires or creates another entity or subsidiary or becomes a member of a joint venture or partner in a partnership, or if the **Named Insured** merges or consolidates with another entity such that the **Named Insured** is the surviving entity (any of which events is referred to as a

"Transaction" in this GENERAL CONDITION (F)), the Insurer will have the option of providing coverage in respect of such entity or subsidiary, and no coverage will be afforded under this Policy for any **Claim** in any way involving the entity or subsidiary that is acquired, created, merged or consolidated with, unless:

(1)     the **Named Insured** gives the Insurer notice of such Transaction as soon as possible but in no event later than ninety (90) days after the effective date of the Transaction;

(2)     the **Named Insured** gives the Insurer such information regarding the Transaction as the Insurer requests; and

(3)     the **Named Insured** accepts any terms, conditions, exclusions, and limitations and pays any additional premium as the Insurer, at its sole discretion, imposes.

If the Insurer, at its sole discretion, elects to provide coverage in respect of such entity or subsidiary, this Policy shall not apply to, and the Insurer will not pay any **Loss** or **Defense Expenses** for, any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any **Occurrence** or **Wrongful Act** happening before:

(a)     the effective date of the Transaction; or

(b)     the effective date of coverage under this Policy for such entity or subsidiary as set forth in an endorsement to be issued to extend coverage to such entity or subsidiary, whichever is later.

For purposes of this GENERAL CONDITION (F), "subsidiary" means any entity for which the **Named Insured** owns or possesses fifty percent (50%) of the issued and outstanding capital stock, or has or controls the right to elect or appoint more than fifty percent (50%) of the directors or trustees.

(G)    **Sales or Dissolution of Insured Entities; Cessation of Business:**

If, during the **Policy Period**:

(1)     the **Named Insured** is dissolved, sold, acquired by, merged into, or consolidated with another entity such that the **Named Insured** is not the surviving entity; or

(2)     any person, entity, or affiliated group of persons or entities obtains:

(a)     ownership or possession of fifty percent (50%) of the issued and outstanding capital stock of the **Named Insured,** or;

(b)     the right to elect or appoint more than fifty percent (50%) of the **Named Insured's** directors or trustees; or

(c)     if the **Named Insured** ceases to do business for any reason;

(any of which events is referred to as a "Transaction" in this GENERAL CONDITION (G) coverage under this Policy shall continue in full force and effect until the Expiration Date or any earlier cancellation date, but this Policy shall apply only to **Occurrences** or **Wrongful Acts** happening before the effective date of such Transaction. This Policy will not apply to, and the Insurer will not pay any **Loss** or **Defense Expenses** for, any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any **Wrongful Act** or **Occurrence** happening on or after the effective date of such Transaction.

(H)    **Extended Reporting Period:**

(1)     If this Policy is terminated by any party for any reason other than misrepresentation, fraud or nonpayment of premium, the **First Named Insured** shall have the right to purchase an **Extended Reporting Period**.  In order to purchase the **Extended Reporting Period**, the **First Named Insured**, within thirty (30) days of the earlier of the effective date of termination or the date of any conversion of coverage under GENERAL CONDITION (G)(2), must (i) provide written notice by certified mail to the Insurer requesting the **Extended Reporting Period**, and (ii) pay any additional premium required by the

Insurer promptly when due, together with any earned but unpaid premium which may be due under the terminated policy. The additional premium shall be deemed fully earned upon inception of the **Extended Reporting Period.**

(2)    The **Extended Reporting Period** will apply only with respect to any **Wrongful Act** or **Occurrence** committed before the effective date of such termination or the date of any conversion of coverage under GENERAL CONDITION (G)(2), whichever is earlier. The **Extended Reporting Period** will not apply to:

    (a)    any **Claim** for **Professional Services** rendered before the **Retroactive Date** or after the termination date of this Policy;

    (b)    any **Claim** or proceedings pending as of the termination date of this Policy;

    (c)    any paid **Claim**;

    (d)    any **Wrongful Act** or **Occurrence** that is covered under any subsequent insurance purchased by the **Insureds** or that would be covered but for exhaustion of the limit of liability applicable to such **Wrongful Act** or **Occurrence** under such insurance;

    (e)    any **Administration** of the **Insured's Employee Benefits Program** rendered before the **Retroactive Date** or after termination of this Policy; or

    (f)    any **Wrongful Act** or **Occurrence** that happened before the **Retroactive Date** of this Policy.

(3)    If an **Extended Reporting Period** is purchased in accordance with clause (1) above, any **Claim** made during such **Extended Reporting Period** shall be deemed to have been made during the **Policy Period.** The Insurer's **Limit of Liability** in respect of **Claims** made during the **Extended Reporting Period** shall be part of, and not in addition to, the Insurer's **Limit of Liability** for all **Claims** made during the **Policy Period.** The **Extended Reporting Period** will not be deemed to extend the **Policy Period** or change the scope of coverage provided by this Policy.

## (I)    Cancellation; Non-Renewal:

(1)    The Insurer may not cancel this Policy, except for non-payment of premium, in which case ten (10) days written notice shall be given.

(2)    The **First Named Insured** may cancel this Policy by mailing the Insurer written notice stating when, not later than the Expiration Date set forth in ITEM 2(b) of the Declarations, such cancellation will be effective. In such event, except as set forth in GENERAL CONDITION (M), the earned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

(3)    The Insurer will not be required to renew this Policy upon its expiration.

## (J)    Assistance and Cooperation:

In the event of a **Claim**, the **Insured** shall provide the Insurer with all information, assistance and cooperation that the Insurer reasonably requests. At the Insurer's request, the **Insured** shall assist in investigating, defending and settling **Claims**; enforcing any right of contribution or indemnity against another who may be liable to any **Insured**; and the conduct of actions, suits, appeals or other proceedings, including, but not limited to, attending trials, hearings and depositions; securing and giving evidence; and obtaining the attendance of witnesses.

## (K)    Subrogation:

In the event of any payment hereunder, the Insurer shall be subrogated to the extent of any payment to all of the rights of recovery of the **Insured**. The **Insured** shall execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable the Insurer effectively to bring suit in its name. The **Insured** shall do nothing that may prejudice the Insurer's position or potential or actual rights of

recovery. The obligations of the **Insured** under this GENERAL CONDITION (K) shall survive the expiration or termination of the Policy.

(L)  **Other Insurance and Risk Transfer Arrangements:**

Any **Loss** or **Defense Expenses** resulting from any **Claim** insured under any other insurance policy or risk transfer instrument, including, but not limited to, self-insured retentions, deductibles, fronting arrangements, professional liability policies covering any of the **Named Insured's** medical staff, **Employees, Volunteers** or **Insured Medical Practitioners**, or other alternative arrangements which apply to the **Loss** or **Defense Expenses** shall be paid first by those instruments, policies or other arrangements. It is the intent of this Policy to apply only to **Loss** or **Defense Expenses** that are more than the total limit of all deductibles, limits of liability, self-insured amounts or other insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, fronting or otherwise and whether or not collectible. These provisions do not apply to other insurance policies or risk transfer arrangements written as specific umbrella or excess insurance over the Limit of Liability of this Policy. This Policy shall not be subject to the terms of any other policy of insurance or plan or program of self-insurance; and in no event will the Insurer pay more than the Limit of Liability set forth in ITEM 4 of the Declarations.

(M)  **Exhaustion:**

If the Insurer's Limit of Liability is exhausted by the payment of **Loss,** the premium will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind or nature whatsoever under this Policy.

(N)  **Authorization and Notices:**

The **First Named Insured** will act on behalf of all **Insureds** with respect to the giving or receiving of any notices under this Policy; the payment of premiums to, and receiving of return premiums from, the Insurer; the receiving and acceptance of any endorsements issued to form a part of this Policy; and the exercising or declining to exercise any Discovery Period.

(O)  **Conformance:**

Any terms of this Policy that are in conflict with the laws or regulations of the state in which this Policy is issued are amended to conform with such laws or regulations.

(P)  **Representation; Incorporation of Application; Entire Agreement:**

The **Insureds** represent that the particulars and statements contained in the **Application** attached to this Policy are true, accurate and complete and agree that:

(1)   this Policy is issued and continued in force by the Insurer in reliance upon the truth of such representation;

(2)   those particulars and statements are the basis of this Policy; and

(3)   the **Application** and those particulars and statements are incorporated in and form a part of this Policy.

No knowledge or information possessed by any **Insured** shall be imputed to any other **Insured**, except for material facts or information known to the person or persons who signed the **Application**. In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the **Application**, this Policy shall be void with respect to any **Insured** who knew of such untruth, misrepresentation or omission or to whom such knowledge is imputed.

(Q)  **No Action against Insurer:**

(1)   No action shall be taken against the Insurer by any **Insured** unless, as conditions precedent thereto, the **Insured** has fully complied with all of the terms of this Policy and the amount of the **Insured's** obligation

to pay has been finally determined either by judgment against the **Insured** after adjudicatory proceedings or by written agreement of the **Insured**, the **Claim**ant and the Insurer.

(2)    No individual or entity shall have any right under this Policy to join the Insurer as a party to any **Claim** to determine the liability of any **Insured**; nor shall the Insurer be impleaded by an **Insured** or his, her, or its legal representative in any such **Claim**.

(R)    **Notice:**

(1)    Notice to any **Insured** shall be sent to the **First Named Insured** at the address designated in ITEM 1 of the Declarations.

(2)    Notice to the Insurer shall be sent to the address designated in ITEM 6 of the Declarations.

(S)    **Changes:**

Notice to or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or change in any part of this Policy or prevent or estop the Insurer from asserting any right(s) under this Policy. This Policy can only be altered, waived, or changed by written endorsement issued to form a part of this Policy.

(T)    **Insolvency of Insured:**

The Insurer will not be relieved of any of its obligations under this Policy by the bankruptcy or insolvency of any **Insured** or his/her/its estate.

(U)    **Inspections and Surveys:**

The Insurer or its duly authorized agent has the right but is not obliged to:

(1)    make inspections and surveys of the **Named Insured's** premises and operations at any time;

(2)    provide the **Insured** with reports on the conditions found;

(3)    recommend changes;

(4)    conduct loss control and prevention activity.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premium to be charged.

The Insurer does not:

(1)    make safety inspections;

(2)    undertake to perform the duty of any entity to provide for the health or safety of workers or the public; nor

(3)    warrant that conditions:

(a)    are safe or healthy; or

(b)    comply with laws, regulations or codes.

(V)    **Examination of Books and Records:**

The Insurer may examine and audit the books and records of the **Insured** as they relate to this Policy.

(W)    **Service of Suit:**

The Insurer hereby designates the Director of the Department of Insurance in the state in which this Policy is

issued, and his/her successor(s) in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured** arising under or out of this Policy.

(X)    **Assignment:**

No assignment of interest under this Policy shall bind the Insurer without its written consent issued as an endorsement to form a part of this Policy.

(Y)    **Entire Agreement:**

The **Insureds** agree that this Policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the Insurer or any of its agents relating to this insurance.

(Z)    **Headings:**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**In witness whereof the Underwriter has caused this Policy to be executed by its authorized officers.**


Ironshore Specialty Insurance Company by:


Secretary                                                                President



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 1

**Policy Number:** 001163303                                    **Effective Date of Endorsement:** December 29, 2014
**Insured Name:**  4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OFAC COMPLIANCE NOTICE

Payment of Loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____                    January 28, 2015
Authorized Representative                                                        Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement #** 2

**Policy Number:** 001163303                                              **Effective Date of Endorsement:** December 29, 2014
**Insured Name:** 4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SEPARATE LIMIT FOR ADMINISTRATORS

In consideration of the premium charged:

(1)        INSURING AGREEMENT (A) is amended to read in its entirety as follows:

    (A)    **Claims Made Professional Liability Insurance**:

        (1)    The Insurer will pay on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for a **Professional Services Wrongful Act** happening on or after the **Retroactive Date,** provided that the **Claim** is first made against the **Insured** during the **Policy Period** or applicable **Extended Reporting Period**, and subject to the applicable Limit of Liability set forth in ITEM 4(A)(1) of the Declarations.

        (2)    In the event that the Each Claim Limit of Liability under INSURING AGREEMENT (A)(1) is exhausted by reason of payment for any **Claim** thereunder, the Insurer will pay, up to the Each Claim Limit of Liability set forth in ITEM 4(A)(2) of the Declarations, on behalf of any employed administrator of the **Insured** (an "Administrator") any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** first made against an Administrator for a **Professional Services Wrongful Act** happening on or after the **Retroactive Date**, provided, that such **Claim** is first made during the **Policy Period** or applicable **Extended Reporting Period.**

        (3)    In the event that the Aggregate Limit of Liability under INSURING AGREEMENT (A)(1) is exhausted by reason of payment for **Claims** thereunder, the Insurer will pay, up to the Aggregate Limit of Liability set forth in ITEM 4(A)(2) of the Declarations, on behalf of an Administrator any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** first made against such Administrator for a **Professional Services Wrongful Act** happening on or after the **Retroactive Date**, provided, that such **Claim** is first made during the **Policy Period** or applicable **Extended Reporting Period.**

(2)        The coverage afforded to an Administrator under this endorsement is limited to INSURING AGREEMENT (A) of this Policy.  No coverage will be available under any other Insuring Agreement of this Policy for any **Claims** against such Administrator.  Coverage under INSURING AGREEMENT (A)(2) will be available only after the Limits of Liability

under INSURING AGREEMENT (A)(1) have been exhausted, including any payments made on behalf of such Administrator as an **Insured**.

(3)     It is understood and agreed that the Limits of Liability set forth in ITEM 4(A)(2) of the Declarations, as amended below, will apply separately to all Administrators, in the aggregate, for whom this Policy provides coverage, and shall be in addition to, and not part of, all other Limits of Liability of the **Insured**.  Consequently, ITEM 4(A) of the Declarations is amended to read in its entirety as follows:

ITEM 4.  LIMITS OF LIABILITY

| | | | |
|---|---|---|---|
| A. | (1) | Professional Liability | |
| | | Each Claim Limit of Liability: | $1,000,000 |
| | | Aggregate Limit of Liability: | $3,000,000 |
| | | Each Claim Self Insured Retention | $500,000 |
| | | Aggregate Self Insured Retention | N/A |
| | (2) | Employed Administrators | |
| | | Each Claim Limit of Liability: | $100,000 |
| | | Aggregate Limit of Liability: | $100,000 |
| | | Each Claim Self Insured Retention | N/A |
| | | Aggregate Self Insured Retention | N/A |

(4)     GENERAL CONDITION (A)(1) of the Policy shall be deemed amended to effect the purpose and intent of this endorsement.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

January 28, 2015
Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 3

**Policy Number:** 001163303                    **Effective Date of Endorsement:** December 29, 2014
**Insured Name:** 4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SCHEDULE OF LOCATIONS WITH APPLICABLE RETROACTIVE DATES

In consideration of the premium charged, in addition to the Principal Address shown in ITEM 1 of the Declarations, the coverage afforded under this Policy shall apply to each of the following location(s), but solely with respect to **Wrongful Acts** committed or allegedly committed, or **Occurrences** happening, on or after the retroactive date set forth opposite the name of each such location:

| Location(s) | Retroactive Date |
|---|---|
| • 510 N Parkway Ave.,  Battle Ground, WA 98604 | 3/1/2008 |
| • 2105 12th Ave. Rd.,  Nampa, ID 83686 | 10/1/2011 |
| • 46 N Midland Blvd.,  Nampa, ID 82651 | 10/1/2011 |
| • 10435 SE Cora St.,  Portland, OR 97266 | 10/1/2011 |
| • 1053 W 1020 S,  Provo, UT 84601 | 10/1/2011 |
| • 2700 W. 5600 S,  Roy, UT 84067 | 10/1/2011 |
| • 910 Monroe Blvd.,   Ogden, UT 84404 | 10/1/2011 |
| • 200 Martin Luther King Dr.,  Cleveland, MS 38732 | 10/1/2011 |
| • 102 Woodchase Park Dr.,  Clinton, MS 39056 | 10/1/2011 |
| • 490 W. Poplar Ave.,  Collierville, TN 38017 | 10/1/2011 |
| • 1506 Main St.,  Columbia, MS 39429 | 10/1/2011 |
| • 302 Alcorn Dr.,  Corinth, MS 38834 | 10/1/2011 |
| • 111 Chase St.,  Byhalia, MS 38611 | 10/1/2011 |
| • 902 Sgt. John A. Pittman Dr.,  Greenwood, MS 38930 | 10/1/2011 |
| • 1966 Hill Dr., Grenada, MS 38901 | 10/1/2011 |
| • 1315 Hwy. 4 E,  Holly Springs, MS 38635 | 10/1/2011 |
| • 401 Hwy. 82 W,  Indianola, MS 38751 | 10/1/2011 |
| • 344 Arlington Ave.,  Natchez, MS 39120 | 10/1/2011 |
| • 1620 Read Rd.,  Picayune, MS 39466 | 10/1/2011 |
| • 8119 Memphis Arlington Rd.,  Bartlett, TN 38133 | 10/1/2011 |
| • 2850 Porters Chapel Rd.,  Vicksburg, MS 39180 | 10/1/2011 |
| • 925 Calhoun Ave.,  Yazoo City, MS 39194 | 10/1/2011 |
| • 550 East Gate Dr.,  Aiken, SC 29803 | 10/1/2011 |
| • 807 South East Main St.,  Simpsonville, SC 29681 | 10/1/2011 |

LTC.P.009 (03/09 Ed.)                                                                                 Page 1 of 2

- 226 WA Reel Dr.,  Edgefield, SC 29824 — 10/1/2011
- 406 West Broad St.,  Iva, SC 29655 — 10/1/2011
- 208 James St.,  Anderson, SC 29625 — 10/1/2011
- 3647 Maybank Hwy.,  Johns Island, SC 29455 — 10/1/2011
- 109 Bentz Rd., Piedmont, SC 29673 — 10/1/2011
- 200 Anne Dr.,  Easley, SC 29640 — 10/1/2011
- 575 Stonewall Jackson Blvd., Orangeburg, SC 29115 — 6/28/2014
- 2 Griffith Rd., Greenville SC 29607 — 8/1/2014
- 101 Cobblestone Trace SE,  Moultrie, GA 31768 — 10/1/2011
- 401 Chandler Rd.,  Greer, SC 29651 — 10/1/2011
- 1850 Crestview Rd.,  Easley, SC 29642 — 10/1/2011
- 8 North Texas Ave.,  Greenville, SC 29611 — 10/1/2011
- 661 Rutherford Road,  Greenville, SC  29609 — 10/1/2011
- 2906 Geer Hwy.,  Marietta, SC 29661 — 10/1/2011
- 505 Coliseum Dr., Macon GA 31217 — 6/28/2014
- 716 East Cedar Rock St.,  Pickens, SC 29671 — 10/1/2011
- 204 Holiday Rd.,  Mccormick, SC 29835 — 10/1/2011
- 138 Rosemond St.,  Pickens, SC 29671 — 10/1/2011
- 3000 Lenora Church Dr.,  Snellville, GA 30078 — 10/1/2011
- 2051 Country Club Rd.,  Wadesboro, NC 28170 — 10/1/2011
- 1150 Northwest Dr.,  Charlottesville, VA 22901 — 10/1/2011
- 2500 Iowa Ave.,  Connersville, IN 47331 — 10/1/2011
- 1575 Scott Dr.,  Farmville, VA 23901 — 10/1/2011
- 222 Fulcher St.,  Hillsville, VA 24343 — 10/1/2011
- 300 Hatcher St.,  Rocky Mount, VA 24151 — 10/1/2011

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

January 28, 2015
Date

4832-8825-6545, v.  1



### IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 4

**Policy Number:** 001163303                    **Effective Date of Endorsement:** December 29, 2014
**Insured Name:** 4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMEND DEFINITION OF "NAMED INSURED" TO INCLUDE ADDITIONAL ENTITIES

In consideration of the premium charged, the term "**Named Insured**," as defined in Section II DEFINITIONS of the Policy, is amended to include each of the following entities, but solely with respect to **Wrongful Acts** committed or allegedly committed, or **Occurrences** happening, on or after the **Retroactive Date**:

**Additional Named Insured(s)**

- Victory Health & Rehab of Battle Ground, LLC
- Trinity Mission Health & Rehab of Holly, LLC
- Trinity Mission Health & Rehab of Midland, LLC
- Trinity Mission Health & Rehab of Portland, LLC
- Trinity Mission Health & Rehab of Provo, LLC
- Trinity Mission Health & Rehab of Roy, LLC
- Trinity Mission Wide Horizon Residential Care Facility, LLC
- Joy Health & Rehab of Cleveland, LLC
- Trinity Mission Health & Rehab of Clinton, LLC
- Dove Health & Rehab of Collierville, LLC
- Song Health & Rehab of Columbia, LLC
- Cornerstone Health & Rehab of Corinth, LLC
- Trinity Mission Health & Rehab of Great Oaks, LLC
- Crystal Health & Rehab of Greenwood, LLC
- Grace Heath & Rehab of Grenada, LLC
- Trinity Mission Health & Rehab of Holly Springs, LLC
- Liberty Health & Rehab of Indianola, LLC
- Crown Health & Rehab of Natchez, LLC
- Covenant Health & Rehab of Picayune, LLC
- Rainbow Health & Rehab of Memphis, LLC
- Covenant Health & Rehab of Vicksburg, LLC
- Oasis Health & Rehab of Yazoo, LLC
- Faith Health & Rehab of Aiken

- New Diamond Health & Rehab of Simpsonville, LLC
- New Trinity Mission Health & Rehab of Edgefield, LLC
- New Exalted Health & Rehab of Iva, LLC
- New Fellowship Health & Rehab of Anderson, LLC
- New Harvest Health & Rehab of Johns Island, LLC
- New Hosanna Health & Rehab of Piedmont, LLC
- New Majesty Health & Rehab of Easley, LLC
- Laurel Baye Healthcare of Orangeburg
- Dayspring Health & Rehab of Simpsonville DBA Patewood Rehabilitation & Healthcare Center
- Agape Health & Rehab of Moultrie, LLC
- Alpha Health & Rehab of Greer, LLC
- New Capstone Health & Rehab of Easley, LLC
- New Glorified Health & Rehab of Greenville, LLC
- Covenant Dove Health & Rehab of Greenville, LLC
- New Hope Health & Rehab of Marietta, LLC
- Laurel Baye Healthcare of Macon
- Manna Health & Rehab of Pickens, LLC
- New Petra Health & Rehab of McCormick, LLC
- New Redeemer Health & Rehab of Pickens, LLC
- Scepter Assisted Living Center of Snellville, LLC
- Scepter Health & Rehab of Snellville, LLC
- Ambassador Health & Rehab of Wadesboro, LLC
- Trinity Mission of Charlottesville, LLC
- Trinity Mission Health & Rehab of Connersville, LLC
- Trinity Mission of Farmville, LLC
- Trinity Mission of Hillsville, LLC
- Trinity Mission of Rocky Mount, LLC
- Covenant Dove Healthcare of Orangeburg, LLC
- Covenant Dove Healthcare of Macon, LLC

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____          January 28, 2015
Authorized Representative                                              Date



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 5

**Policy Number:** 001163303                                **Effective Date of Endorsement:** December 29, 2014
**Insured Name:** 4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DISINFECTION EVENT EXPENSE REIMBURSEMENT COVERAGE

In consideration of the premium charged,

1.  In the event that reasonable **Disinfection Expense** (as defined below) actually paid by the **Named Insured** during the **Policy Period** in connection with a **Disinfection Event** occurring during the **Policy Period** are not covered for any reason under any other policy or policies of insurance issued to the **Named Insured**, the **Underwriter** shall reimburse the **Named Insured** for such **Disinfection Expense**, subject to the limits of liability set forth in paragraph (2) below and self-insured retention set forth in paragraph (3) below, and upon satisfactory proof of payment by the **Named Insured**.

2.  The **Underwriter's** maximum aggregate limit for all **Disinfection Expense** resulting from all **Disinfection Event**s reimbursed under paragraph (1) above shall be $25,000, which amount is in addition to, and not part of, the Limits of Liability set forth in ITEM 4 of the Declarations. Payment of such maximum aggregate limit of liability shall terminate the **Underwriter's** obligation to reimburse any further **Disinfection Expense** under paragraph (1) above.

3.  The **Underwriter's** obligation to reimburse **Disinfection Expense** under paragraph (1) above shall be excess of a self-insured retention of $5,000 per **Disinfection Event**. The **Named Insured** shall be responsible for payment in full of such self-insured retention. The self-insured retention shall apply to each **Disinfection Event**, and shall be eroded (or exhausted) by the **Named Insured's** payment of **Disinfection Expense**.

4.  For purposes of this endorsement, the following terms shall have the meanings ascribed to them below:

    (a)  "**Disinfection Event**" means any case or series of cases of the MRSA virus or other facility-borne infectious virus, bacteria or disease that requires reporting of such case or series of cases to any local, state or federal governmental or healthcare oversight agency or entity.

    (b)  "**Disinfection Expense**" means reasonable fees and costs incurred by the **Named Insured** to clean and disinfect the **Named Insured's** facility after any **Disinfection Event**. **Disinfection Expense** includes costs (a) to engage third party providers of cleaning/disinfection services; (b) to notify patients/residents, visitors or other potentially affected persons; and (c) incurred in the management of public relations with respect to such **Disinfection Event**. **Disinfection Expense** does not include any remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of the **Named Insured,** or cost of cleaning/disinfecting supplies or products.

5.      The **Underwriter** shall not be liable under this endorsement for any **Disinfection Expense** for which the **Named Insured** has coverage under any insurance policy other than this Policy, regardless of whether such policy is stated to be primary, contributory, excess, contingent, or otherwise.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____          January 28, 2015
Authorized Representative                                         Date



### IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 6

**Policy Number:** 001163303                                    **Effective Date of Endorsement:** December 29, 2014
**Insured Name:**  4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED ENDORSEMENT

In consideration of the premium charged:

1. The term "**Insured**," as defined in the Policy, shall be deemed to include each person or entity listed below (each an "**Additional Insured**"), but only with respect to liability of any such **Additional Insured** that is based on or arises out of a **Claim** for which coverage would otherwise be afforded to the original **Insured** under this Policy.

   **Additional Insured(s):**

   - The PrivateBank and Trust Company, 120 South LaSalle St., Chicago, IL  60603
   - Berkadia Commercial Mortgage, LLC and the Secretary for Housing - Federal Housing Commissioner, DHUD, Washington, D.C., his successors or assigns, as interest may appear c/o Berkadia Commercial Mortgage, LLC; P.O. Box 1687, Horsham, PA 19044
   - Adams County Memorial Hospital

2. It is understood and agreed that each **Additional Insured** listed above is being afforded coverage under this Policy for any liability incurred *solely* as a result of the acts, errors or omissions of the original **Insured**. No coverage will be available under this Policy for any **Claim** based on or arising out of any actual or alleged independent or direct liability of any **Additional Insured**.

3. The Underwriter will provide the **Additional Insured(s)** identified above with at least ten (10) days' written notice of cancellation or non-renewal of this Policy if such cancellation or non-renewal is for non-payment of premium, or sixty (60) days' written notice of cancellation or non-renewal if such cancellation or non-renewal is for any other reason.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____                    January 28, 2015
Authorized Representative                                    Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 7**

**Policy Number:** 001163303                    **Effective Date of Endorsement:** December 29, 2014
**Insured Name:**  4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PL-GL LIMITS PER LOCATION, WITH  SINGLE AGGREGATE POLICY LIMIT

In consideration of the premium charged,

1.      Clause (1) of Section IV GENERAL CONDITION (A) is amended to read in its entirety as follows:

   (1)      Insuring Agreement A – Professional Liability

   a.    The "Each Claim" amount stated in ITEM 4(A) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** for which this Policy provides coverage under INSURING AGREEMENT A.

   b.    The "Aggregate for all Claims per Location" amount stated in ITEM 4(A) of the Declarations will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** involving any location identified in the Schedule of Locations attached to this Policy, for which this Policy provides coverage under INSURING AGREEMENT A.

2.      Clause (2) of Section IV GENERAL CONDITION (A) is amended to read in its entirety as follows:

   (2)      Insuring Agreement B – General Liability

   a.    The "Each Claim" amount stated in ITEM 4(B) of the Declarations:

   i.      With respect to General Liability, **Personal Injury** and **Advertising Injury,** will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** under any such coverage for which this Policy provides coverage under INSURING AGREEMENT B; and

   ii.     With respect to **Fire Damage**, will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from each **Claim** or **Related Claims** under such **Fire Damage** coverage for which this Policy provides coverage under INSURING AGREEMENT B.

   b.    The "Aggregate for all Claims per Location" amount stated in ITEM 4(B) of the Declarations:

   i.      With respect to General Liability, **Personal Injury** and **Advertising Injury,** will be the

Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** under all such coverages involving any location identified in the Schedule of Locations attached to this Policy for which this Policy provides coverage under INSURING AGREEMENT B; and

ii.    With respect to **Fire Damage**, will be the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** under such **Fire Damage** coverage involving any location identified in the Schedule of Locations attached to this Policy for which this Policy provides coverage under INSURING AGREEMENT B.

3.    Section IV (A) of the Declarations is amended to read as follows:

(A)    Professional Liability
Each Claim Limit of Liability:                    $1,000,000
Aggregate Limit of Liability per Location:        $3,000,000

Each Claim Self Insured Retention:                $500,000
Aggregate Self Insured Retention:                 N/A

4.    Section IV (B) of the Declarations is amended to read as follows:

(B)    General Liability
Each Claim Limit of Liability:                    $1,000,000
Aggregate Limit of Liability per Location:        $3,000,000
    Products/Completed Ops Limit:                 ☒ Included
    Fire Damage Each Claim:                       $100,000
    Fire Damage Aggregate per Location:           $100,000

Each Claim Self Insured Retention:                $500,000
Aggregate Self Insured Retention:                 N/A

5.    Notwithstanding anything to the contrary contained in this Policy, the Underwriter's maximum Limit of Liability for all **Loss** resulting from all **Claims** or **Related Claims** for which this Policy provides coverage under all Insuring Agreements is $15,000,000.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____          January 28, 2015
Authorized Representative                           Date



## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 8

**Policy Number:** 001163303                                   **Effective Date of Endorsement:** December 29, 2014
**Insured Name:**  4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DIVESTITURE LOCATIONS ENDORSEMENT

In consideration of the premium charged, with respect to each location identified below, no coverage will be available under this Policy for any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** committed or allegedly committed, or any **Bodily Injury**, **Property Damage**, **Advertising Injury** or **Personal Injury** happening, or any **Evacuation Expense**, **Public Relations Expense** or **Resident Loss of Property Expense** incurred, in any such location after the divestiture date set forth opposite such location's name.

| **Location Name and Address**: | **Divestiture Date**: |
|---|---|
| ARK Pharmacy | 4/1/11 |
| Blessed Health & Rehab of Dunn, LLC | 8/1/12 |

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

January 28, 2015
Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 9

**Policy Number:** 001163303                              **Effective Date of Endorsement:** December 29, 2014
**Insured Name:** 4 West Holdings, Inc.


THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INCREASE LIMITS AND SPLIT RETROACTIVE DATE FOR SPECIFIC NAMED INSURED(S) – PL AND GL

In consideration of the premium charged:

1.   On and as of the Endorsement Effective Date set forth above, with respect *solely* to any **Claim** or **Related Claims** under INSURING AGREEMENT (A) or (B) first made against a **Named Insured** identified below (a "**Subject Claim**"), the "Each Claim" and "Aggregate" Limits of Liability set forth in ITEMS 4(A) and (B) of the Declarations are amended to read as follows:

   A)   Professional Liability
         Each Claim Limit of Liability:      $250,000
         Aggregate Limit of Liability:      $750,000

   A)   General Liability
         Each Claim Limit of Liability:      $6,000,000
         Aggregate Limit of Liability:      $6,000,000

2.   With respect solely to any **Subject Claim** based on or arising out of a **Wrongful Act** committed or allegedly committed on or after the Retroactive Date set forth in ITEM 3(A) or 3(B) of the Declarations (as applicable), but before the date set forth opposite such **Named Insured's** name below, the Insurer's maximum Limit of Liability for all **Loss** resulting from such **Subject Claim** shall be $1,000,000; and the Insurer's maximum aggregate Limit of Liability for all **Loss** resulting from all such **Subject Claims** shall be $3,000,000.

| Named Insured | Date |
|---|---|
| Caroleton Manor | 5/1/2013 |

3.    With respect solely to any **Subject Claim** under INSURING AGREEMENT (A) or (B) first made against a **Named Insured** identified above based on or arising out of a **Wrongful Act** committed or allegedly committed on or after 5/01/2013, the Insurer's maximum Limit of Liability for all **Loss** resulting from such **Subject Claim** shall be the amount set forth in paragraph 1 above as the "Each Claim Limit of Liability"; and the Insurer's maximum aggregate Limit of Liability for all **Loss** resulting from all such **Subject Claims** for which this Policy provides coverage shall be the amount set forth in paragraph 1 above as the "Aggregate Limit of Liability."

All other terms and conditions of this Policy remain unchanged.

_____               January 28, 2015
Authorized Representative                             Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 10

**Policy Number:** 001163303
**Insured Name:** 4 West Holdings, Inc.

**Effective Date of Endorsement:** December 29, 2014

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMEND LIMITS FOR SPECIFIC NAMED INSURED(S) – PL AND GL

In consideration of the premium charged:

1.  On and as of the Endorsement Effective Date set forth above, with respect *solely* to any **Claim** or **Related Claims** under INSURING AGREEMENT (A) or (B) first made against a **Named Insured** identified below (a "**Subject Claim**"), the "Each Claim" and "Aggregate" Limits of Liability set forth in ITEMS 4(A) and (B) of the Declarations are amended to read as follows:

    2.  Professional Liability
        Each Claim Limit of Liability:    $1,000,000
        Aggregate Limit of Liability:    $3,000,000

    3.  General Liability
        Each Claim Limit of Liability:    $1,000,000
        Aggregate Limit of Liability:    $3,000,000

4.  With respect solely to any **Subject Claim** based on or arising out of a **Wrongful Act** committed or allegedly committed on or after the Retroactive Date set forth in ITEM 3(A) or 3(B) of the Declarations (as applicable), but before the Endorsement Effective Date set forth above, the Insurer's maximum Limit of Liability for all **Loss** resulting from such **Subject Claim** shall be $250,000; and the Insurer's maximum aggregate Limit of Liability for all **Loss** resulting from all such **Subject Claims** shall be $750,000**.**

| Named Insured | Date |
|---|---|
| Olive Leaf Holding Company, LLC | 12/29/2010 |
| Career Services CAN – Training School | 12/29/2010 |
| Ark Hospice, LLC – offices for rehab facilities | 12/29/2010 |
| Anderson Veterans Office Park, LLC | 12/29/2010 |
| Capstone Health & Rehab of Easley, LLC | 12/29/2010 |
| Dayspring Health & Rehab of Simpsonville, LLC | 12/29/2010 |
| Fellowship Health & Rehab of Anderson, LLC | 12/29/2010 |
| Faith Health & Rehab of Aiken, LLC | 12/29/2010 |
| Majesty Health & Rehab of Easley, LLC | 12/29/2010 |

| | |
|---|---|
| Hope Health & Rehab of Marietta,LLC | 12/29/2010 |
| Omega Health & Rehab of Greenville, LLC | 12/29/2010 |
| Ambassador Health & Rehab of Wadesboro, LLC | 12/29/2010 |
| Manna Health & Rehab of Pickens, LLC | 12/29/2010 |
| Scepter Health & Rehab of Snellville, LLC | 12/29/2010 |
| Alpha Health & Rehab of Greer, LLC | 12/29/2010 |
| Hosanna Health & Rehab of Piedmont, LLC | 12/29/2010 |
| Redeemer Health & Rehab of Pickens, LLC | 12/29/2010 |
| Petra Health & Rehab of McCormick, LLC | 12/29/2010 |
| Diamond Health & Rehab of Simpsonville, LLC | 12/29/2010 |
| Glorified Health & Rehab of Greenville, LLC | 12/29/2010 |
| Exalted Health & Rehab of Iva, LLC | 12/29/2010 |
| Agape Health & Rehab of Moultrie, LLC | 12/29/2010 |
| Harvest Health & Rehab of Johns Island, LLC | 12/29/2010 |
| Blessed Health & Rehab of Dunn, LLC | 12/29/2010 |

5.  With respect solely to any **Subject Claim** under INSURING AGREEMENT (A) or (B) first made against a **Named Insured** identified above based on or arising out of a **Wrongful Act** committed or allegedly committed on or after the Endorsement Effective Date, the Insurer's maximum Limit of Liability for all **Loss** resulting from such **Subject Claim** shall be the amount set forth in paragraph 1 above as the "Each Claim Limit of Liability"; and the Insurer's maximum aggregate Limit of Liability for all **Loss** resulting from all such **Subject Claims** for which this Policy provides coverage shall be the amount set forth in paragraph 1 above as the "Aggregate Limit of Liability."

All other terms and conditions of this Policy remain unchanged.

_____           January 28, 2015
Authorized Representative                                                  Date



| | **Ironshore Insurance Services LLC.** |
|---|---|
| | A subsidiary of Ironshore Holdings (U.S.) Inc. |
| | 50 South 16th Street |
| | Suite 3410 |
| | Philadelphia, PA  19102 |

November 11, 2015

Jerilynn Leahy
Beecher Carlson (MA)
15 Broad Street, 8th Floor
Boston, MA  02109

|  |  |  |
|---:|:---|:---|
| **Re:** | 4 West Holdings, Inc. | |
| | 2723 Summer Oaks Drive | |
| | Bartlett, TN  38134 | |
| **Line Of Business:** | Long Term Care – Primary | |
| **Policy Number:** | 001163303 | |
| **Policy Term:** | 12/29/2014 TO 12/29/2015 | |

Dear Jerilynn:

Enclosed please find the midterm endorsements for the above referenced account.   We appreciate your consideration of Ironshore.  Feel free to contact me with any questions or concerns.


Sincerely,


*B. Linda*


Brian Linda
Vice President
Ironshore Insurance Services LLC.
Office: +1 (860) 408-7809
Cell: +1 (860) 712-3059
Fax: 860-408-7801
Email: brian.linda@ironshore.com



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:

75 Federal Street

5th Floor

Boston, MA  02110

Toll Free: (877) IRON411

**Endorsement # 11**

**Policy Number:** 001163303                                      **Effective Date of Endorsement:** December 29, 2014

**Insured Name:**  4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED ENDORSEMENT

In consideration of the premium charged:

1.  The term "**Insured**," as defined in the Policy, shall be deemed to include each person or entity listed below (each an "**Additional Insured**"), but only with respect to liability of any such **Additional Insured** that is based on or arises out of a **Claim** for which coverage would otherwise be afforded to the original **Insured** under this Policy.

    **Additional Insured(s):**

    - The PrivateBank and Trust Company, 120 South LaSalle St., Chicago, IL  60603
    - Berkadia Commercial Mortgage, LLC and the Secretary for Housing - Federal Housing Commissioner, DHUD, Washington, D.C., his successors or assigns, as interest may appear c/o Berkadia Commercial Mortgage, LLC; P.O. Box 1687, Horsham, PA 19044
    - Adams County Memorial Hospital
    - Tapestry Concepts, LLC

2.  It is understood and agreed that each **Additional Insured** listed above is being afforded coverage under this Policy for any liability incurred *solely* as a result of the acts, errors or omissions of the original **Insured**. No coverage will be available under this Policy for any **Claim** based on or arising out of any actual or alleged independent or direct liability of any **Additional Insured**.

3.  The Underwriter will provide the **Additional Insured(s)** identified above with at least ten (10) days' written notice of cancellation or non-renewal of this Policy if such cancellation or non-renewal is for non-payment of premium, or sixty (60) days' written notice of cancellation or non-renewal if such cancellation or non-renewal is for any other reason.

All other terms and conditions of this Policy remain unchanged.

_____          November 11, 2015
Authorized Representative                              Date



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 12**

**Policy Number:** 001163303                    **Effective Date of Endorsement:** November 15, 2015
**Insured Name:**  4 West Holdings, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL LOCATION(S) WITH APPLICABLE RETROACTIVE DATES – GL ONLY

In consideration of the additional premium of <sup>REDACTED</sup> charged, in addition to the Principal Address shown in ITEM 1 of the Declarations, the coverage afforded under INSURING AGREEMENT (B) of this Policy shall apply to each of the following location(s), but solely with respect to **Occurrences** happening on or after the retroactive date set forth opposite the name of each such location:

| Location(s): | Retroactive Date: |
|---|---|
| 4210 Columbia Rd  –  Columbia Professional Centre Bldg. # 5 – Suite  A  MARTINEZ, COLUMBIA COUNTY, GA 30907 Approx.  1,375 Square Feet Columbia County Tax ID # 079 146 Landlord: Dr. Keith Blevins 1934 Byrnes Rd North Augusta, SC 29841 | 11/15/2015 |

No coverage will be available under this Policy under any other INSURING AGREEMENT of the Policy for any **Claim** made against, or otherwise involving, the location identified above.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____                    November 11, 2015
Authorized Representative                    Date