IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **IRONSHORE SPECIALTY INSURANCE COMPANY,** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) CIVIL ACTION NO. 5:23-cv-358 (MTT) |
| **ALPHONZO LOGAN, et al.,** | ) ) ) |
| **Defendants.** | ) ) |

## ORDER

Plaintiff Ironshore Specialty Insurance Company ("Ironshore") filed this declaratory judgment action against defendants Alphonzo Logan, Dewayne Logan, Jamaar Dewayne Logan as Executor of the Estate of Mary Francis Logan ("the Logans"), and 4 West Holdings, Inc. ("4 West").[1]  Doc. 1.  The Logans claim they properly obtained a judgment against 4 West's subsidiary and Ironshore, as 4 West's insurer, is responsible for that judgment.  See Doc. 36.  Ironshore moves for judgment on the pleadings arguing 4 West is not legally obligated to pay the judgment and, thus, the judgment is not a covered loss.  Doc. 32.  The Logans move for summary judgment arguing that Ironshore is responsible for satisfying the judgment because Ironshore "abandoned" 4 West.  Doc. 28.

---

[1] 4 West is in default.  See Doc. 23.

## I. BACKGROUND[2]

### A. The Policy

"Ironshore issued [a] Long Term Care Organizations Professional Liability, General Liability and Employee Benefits Liability Insurance Policy … to 4 West for the Policy Period of December 29, 2014 to December 29, 2015."  Docs. 1 ¶ 15; 1-1; 18 ¶ 15.  Covenant Dove Healthcare of Macon, later known as Macon Rehabilitation and Healthcare Center LLC ("Macon Rehab") is a named insured under the policy.[3]  Docs. 1 ¶ 19; 18 ¶ 19.

The policy states, "[t]he Insurer will pay on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim**[.]"  Doc. 1-1 at 6 (emphasis in original).  "Loss" is defined as "damages, settlements, judgments or other amounts…*in excess of the applicable Retention*…and not exceeding the applicable Limit of Liability."  *Id*. at 10-11 (emphasis added).  Additionally, "claim" is defined as "a written demand received by an Insured for monetary damages resulting from a Wrongful Act or an Occurrence."  *Id*. at 8.

Note the emphasis on 4 West's retention.  The policy was subject to a self-insured retention of $500,000.  Doc. 1 ¶¶ 18, 24.  Thus, 4 West was responsible for any loss, including defense costs, within the self-insured retention.  Doc. 1-1 at 21.  Ironshore's obligation was limited to losses or defense expenses in excess of $500,000, assuming, of course, the loss was otherwise covered by the policy.  *Id*.

---

[2] The facts stated here are taken from Ironshore's complaint, the attachments to the complaint, and the Logan's answer.  Docs. 1; 18.

[3] "Macon Rehab no longer exists."  Docs. 1 ¶ 12; 18 ¶ 12.

**B. The Underlying Lawsuit**

Mary Francis Logan was a resident of Macon Rehab, a long-term care facility. Docs. 1 ¶ 25; 18 ¶ 25.  In October of 2014, Mary Francis fractured her hip "when a facility employee was moving her to the shower."  Docs. 1 ¶ 25; 18 ¶ 25.  "On April 28, 2015, counsel for the Logans wrote [to Macon Rehab] stating that it 'may be liable to Ms. Logan for her personal injury,' and requested disclosure of the relevant insurance policies."  Docs. 1 ¶ 26; 18 ¶ 26.  "After the potential claim was reported to Ironshore, Ironshore'[s] third-party-administrator—Hamlin & Burton—acknowledged receipt of the notice, assigned defense counsel, and issued a reservation of rights letter."  Docs. 1 ¶ 27; 18 ¶ 27.  "Defense counsel was directed to submit its invoices to the insured's third-party administrator—HC Navigator—until the insured's $500,000 retention was exhausted."  Docs. 1 ¶ 28; 18 ¶ 28.  In 2016, Alphonzo Logan, Dewayne Logan, and Jamaar Dewayne Logan—Mary Francis's children—"filed a personal injury lawsuit against Macon Rehab [] in Bibb County, Georgia."[4]  Docs. 1 ¶ 30; 18 ¶ 30.

On March 6, 2018, 4 West and Macon Rehab "filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Texas."  Docs. 1 ¶ 31; 18 ¶ 31.  On March 20, 2020, the Logans settled their claims within 4 West's self-insured retention and executed a release, "which discharged all claims against 4 West and Macon Rehab."  Docs. 1 ¶ 32; 1-2; 18 ¶ 32; 47 at 3.  The release states:

> [The Logans] (hereinafter collectively referred to as "Releasors"), for and in consideration of the sum of … or other valuable considerations, hereby remise, release, acquit, satisfy and forever discharge **4 West Holdings, Inc., Macon Rehabilitation and Healthcare Center, LLC f/k/a Covenant Dove Healthcare of Macon, LLC f/k/a Laurel Baye Healthcare of Macon, LLC, and their parents, subsidiaries, affiliates, managers, operators, assignees, officers, directors, members and employees**

---

[4] Mary Francis died in 2016.  Docs. 1 ¶ 29; 18 ¶ 29.

>   (hereinafter collectively referred to as "Releasees"), of and from any and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which said Releasors ever had, now have, or which any personal representative, successor, heir or assign of said Releasors, hereafter can, shall or may have against said Releasees for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents, and more particularly with reference to any and all claims, **specifically** relative to the subject matter of: ***Estate of Mary Logan, Alphonzo Logan and Dewayne Logan v. Macon Rehabilitation and Healthcare Center, LLC, et al.,*** filed in the State Court of Bibb County, Georgia, Case No.: 86465, and the Proof(s) of Claim on behalf of the Releasors filed by The Reynolds Law Group in the United States Bankruptcy Court, Northern District of Texas, Case Number 18-30777 (Jointly Administered), including any and all claims for wrongful death and survival damages, claims for attorneys' fees and costs, and any and all claims that may exist on behalf of the spouse, if any, and any and all natural and/or adopted children of **Mary Logan**, related to the subject matter of the lawsuit referenced herein.
>
>   …
>
>   It is further understood and agreed that this release does not, and is not intended to, release or discharge any claim or potential claim against any other person or entity not identified herein, including, but not limited to, any insurer of the Debtors under the insurance policies under the insurance policies, any other nursing home, any surgeon or doctor, or their professional association, nurses, or independent contractors, any therapy company or pharmaceutical company, consultants, or any hospital except those specifically provided herein.

Doc. 1-2 at 2-3 (emphasis in original). After the execution of the release, "Macon Rehab's defense counsel withdrew from the State Court Action." Docs. 1 ¶ 34; 18 ¶ 34.

"Despite the broad Release, the Logans continued to prosecute their purported claims against the defendants and, after 4 West and Macon Rehab exited bankruptcy and the automatic stay was lifted, asked the State Court to schedule a trial." Docs. 1 ¶ 35; 18 ¶ 35. On February 22, 2023, the State Court sent a notice of a non-jury trial addressed to Macon Rehab. Docs. 1 ¶ 36; 18 ¶ 36. "Because Macon Rehab did not appear for trial, the State Court granted the Logans' motion to strike Macon Rehab's

answer and deemed liability admitted. After a trial on damages, the State Court entered the Judgment for the Logans and awarded them $2.1 million in damages plus court costs and interest." Docs. 1 ¶ 37; 1-3; 18 ¶ 37. On August 18, 2023, counsel for the Logans emailed Ironshore demanding payment of the State Court judgment. Docs. 1 ¶ 39; 18 ¶ 39. The Logans are attempting to garnish Ironshore. *Logan et al v. Macon Rehabilitation and Healthcare Center LLC et al*, No. 5:24-cv-00057-MTT (M.D. Ga. Feb. 14, 2024).

**C. Procedural History**

On September 18, 2023, Ironshore filed this action seeking a declaration that it has no obligation to the Logans because "(1) the Logans fully released and discharged the insureds from any liability three years before the judgment was entered and therefore, there is no 'Loss' under the policy that the insureds are 'legally obligated to pay'; (2) the policy does not cover fines or penalties, such as default judgments; (3) the insureds breached the policy's consent provision to the extent they settled or otherwise admitted liability without Ironshore's written consent, substantially prejudicing Ironshore; and (4) the insureds breached the policy's cooperation provision by failing to inform Ironshore that the case was scheduled for trial, substantially prejudicing Ironshore." Doc. 1 ¶ 6. Ironshore now moves for judgment on the pleadings on Count I of its complaint, i.e., that the State Court judgment "does not constitute [a] 'Loss that the Insured is legally obligated to pay'" under the policy. Doc. 1 ¶¶ 40-44. The Logans also move for summary judgment arguing that Ironshore is responsible for satisfying the State Court judgment against Macon Rehab because Ironshore "abandoned" its insureds. Docs. 28; 28-1 at 13.

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion. *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999). "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). The Court may consider all documents that are attached to the pleadings or incorporated into it by reference. *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002); *Johnson v. City of Atlanta*, ___ F.4th ___, 2024 WL 3384936, at *5-*6 (11th Cir. July 12, 2024).

## III. DISCUSSION

### A. The Unusual Facts

The relevant facts drawn from the pleadings are simple—unusual, but simple nonetheless. The Logans' claim against 4 West[5] was subject to a $500,000 retention, meaning of course, that 4 West had considerable exposure before Ironshore would be

---

[5] Because 4 West and Macon Rehab are named insureds under the policy and because Macon Rehab is a subsidiary of 4 West, the Court refers only to 4 West when discussing Ironshore's "insureds" for ease of reference.

obligated to pay a covered claim and defense costs.  4 West settled with the Logans and obtained a general release, a release that specifically disposed of the claims asserted in the State Court action.  Notwithstanding, that general release, the Logans somehow were able to secure a judgment against 4 West and they claim Ironshore must pay that judgment "up to its policy limits."  Doc. 28-1 at 13.

Although not considered by the Court in its analysis of Ironshore's motion, facts gleaned from the record on the Logans' motion for summary judgment fill some gaps.  According to the Ironshore claims examiner responsible for the underlying tort action, defense counsel in that action "was directed to submit its invoices to Macon Rehab's third-party administrator, HC Navigator, until the insured's $500,000 retention was exhausted."  Doc. 33-3 ¶ 2.  That retention was never exhausted.  *Id*. ¶ 3.  In other words, 4 West and its third-party administrator were handling the claim.  When the claims examiner received the release settling the Logans' claim in October 2020, Ironshore closed its file.  *Id*. ¶ 4.

As for how the case could proceed to judgment in the State Court in the face of the Logans' full release of 4 West, the Logans' lawyer in the underlying tort action testified by affidavit:

> At the March 29, 2023 trial in the Underlying Case, I provided the trial court with the case's procedural history, including the defendants' bankruptcy, the plaintiffs' settlement with defendant and 4 West Holdings, Inc., and the release which carved out claims against any insurer of defendant or 4 West Holdings, Inc.

Doc. 43-1 ¶ 3.  Mr. Reynolds added that the trial proceedings were not transcribed.  *Id.* ¶ 4.  As it turned out, the trial proceedings were recorded and Ironshore secured a transcript of the trial.  Doc. 44-2.  As Ironshore accurately summarized:

> Neither that transcription, the audio recording itself, the publicly available trial docket or anything else in the record, supports the assertion in the Affidavit of Thomas Reynolds that Mr. Reynolds "provided the trial court with the case's procedural history, including the defendants' bankruptcy, the plaintiffs' settlement with defendant and 4 West Holdings, Inc., and the release which carved out claims against any insurer of defendant or 4 West Holdings, Inc."

Doc. 44-1 ¶ 7.  That led Mr. Reynolds to submit an amended affidavit in which he stated:

> Upon review of the transcript from the March 29, 2023 trial in the Underlying Case, there is now more information I recall in connection with the bankruptcy discussions between myself and the court.  As you can see in the transcript from March 29th, Judge Hanson references the fact that (a) a bankruptcy had been filed, (b) the case was stayed for a period pursuant to the bankruptcy, (c) the bankruptcy matter had concluded, (d) counsel for the underlying defendant withdrew on July 13, 2021, and (e) most importantly, that previous discussions had taken place between myself and the court regarding these matters and how to move forward during a prior status hearing held **on January 5, 2023**.…Based on this information, it appears that the discussions regarding the procedural history, Defendant's bankruptcy, the Plaintiffs' settlement with the underlying Defendant, and the release which carved out Plaintiffs rights to pursue claims against any insurer of the Defendant or 4 West Holdings, Inc., were discussed during the January 5th hearing as opposed to the March 29th hearing date.

Doc. 45-1 ¶ 3 (emphasis in original).

**B. The Plain Language of Ironshore's Policy**

The overarching question is whether the judgment against 4 West is a "loss" covered by Ironshore's policy, the answer to that question turns on whether 4 West is "legally obligated" to pay that judgment.  "Insurance is a matter of contract and the parties are bound by the terms of the policy."  *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 221, 231 S.E.2d 245, 249-50 (1976).  Under Georgia law,[6] the

---

[6] The parties agree that Georgia law applies to the policy and Texas law applies to the release.  Docs. 32-1 at 13-17; 36 at 5.

interpretation of an insurance policy is generally "a question of law," to which courts apply the "ordinary rules of contract construction." O.C.G.A. § 13-2-1; *Boardman Petrol., Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998). "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." O.C.G.A. § 13-2-3.

"Under the rules of contract construction, the policy is construed against the insurer as the drafter of the policy and any exclusions from coverage are strictly construed." *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371-72, 599 S.E.2d 220, 221

---

"A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Georgia courts apply "the traditional rule of *lex loci contractus*" meaning contracts "are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case the laws of that sister State will be applied." *Convergys Corp. v. Keener*, 276 Ga. 808, 811 & 811 n.1, 582 S.E.2d 84, 86 & 86 n.1 (2003) (quoting *Gen. Tel. Co. of Se. v. Trimm*, 252 Ga. 95, 95, 311 S.E.2d 460, 461 (1984)). An insurance contract "is made, not where the policy is executed, but where the policy is in fact delivered." *Pink v. A. A. A. Highway Express*, 191 Ga. 502, 13 S.E.2d 337, 337, *aff'd*, 314 U.S. 201 (1941); *see also Gen. Tel. Co. of Se. v. Trimm*, 706 F.2d 1117, 1120 (11th Cir. 1983), *certified question answered*, 252 Ga. 95, 311 S.E.2d 460 (1984).

Here, the policy was delivered in Tennessee. Doc. 1-1 at 2. However, "the Georgia Supreme Court has made it clear that *lex loci contractus* only permits Georgia courts to consider a foreign state's law when it involves its statutes or judicial decisions on those statutes." *Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments*, 861 Fed. Appx. 270, 275 (11th Cir. 2021) (citing *Coon v. Med. Ctr., Inc.*, 300 Ga. 722, 797 S.E.2d 828 (2017)). Because the interpretation of the policy is governed by common law rules of contract construction, Georgia law applies. In any event, Georgia and Tennessee follow the same basic rules of contract interpretation. *See, e.g.*, *Am. Just. Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000); *Demontbreun v. CNA Ins. Companies*, 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991); *Standard Fire Ins. Co. v. Chester O'Donley & Associates, Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998); *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

Because the release includes a Texas choice-of-law provision, Texas law applies to the release. Doc. 1-2 at 3; *Mills v. Berlex Labs., Inc.*, 235 Ga. App. 873, 876 n.1, 510 S.E.2d 621, 623 n.1 (1999) ("In the absence of contrary public policy, our courts normally will enforce a contractual choice of law provision, as the parties by contract may stipulate that the laws of another jurisdiction will govern the transaction.") (citation omitted).

(2004) (alterations omitted). "[I]f the policy exclusions are unambiguous[,] they must be given effect 'even if beneficial to the insurer and detrimental to the insured.'" *Id.* at 372, 599 S.E.2d at 221-22 (quoting *Jefferson Ins. Co. of N.Y. v. Dunn*, 269 Ga. 213, 215, 496 S.E.2d 696, 699 (1998)). "[A] word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one." *N. Metro Directories Publ'g, LLC v. Cotton States Mut. Ins. Co.*, 279 Ga. App. 492, 494, 631 S.E.2d 726, 729 (2006) (quoting *Federated Mut. Ins. Co. v. Ownbey Enters., Inc.*, 278 Ga. App. 1, 5, 627 S.E.2d 917, 921 (2006)).

The policy provides that Ironshore "will pay on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim**[.]" Doc. 1-1 at 6 (emphasis in original). Under the plain language of the policy, Ironshore is not contractually obligated to pay unless 4 West has a legal obligation to pay a covered claim. Because the Logans released 4 West from "any and all manner of action and actions, cause and causes of action … judgments, executions, claims and demands whatsoever," including specifically the State Court action, before they obtained a judgment against 4 West, 4 West is not legally obligated to pay the judgment. Docs. 1-2 at 2. Because 4 West is not obligated to pay the State Court judgment, neither is Ironshore.

Consistent with this, it is well established that "as a general rule a party who releases an insured from liability retains no cause of action against the insurer." *Pool v. Durish*, 848 S.W.2d 722, 723 (Tex. App. 1992); *Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 649 (E.D. Tex. 1997) ("[A] release extinguishes a claim or cause of action as would a prior judgment and is an absolute bar to any suit on the released matter.").

Once the insured is released, any subsequent judgment is "'merely a fiction and ha[s] no legal effect' because the claim, judgment and liability ha[ve] already been extinguished." *Empire Indem. Ins. Co. v. N/S Corp.*, 571 Fed. Appx. 344, 348 (5th Cir. 2014) (quoting *Empire Indem. Ins. Co. v. N/S Corp.*, 2013 WL 1103061, at *2 (E.D. Tex. Mar. 15, 2013)).

The Logans' efforts to circumvent the plain language of the policy go nowhere. First, the Logans claim that *Empire* and *Pool* are distinguishable because neither "case[] concern[s] a primary liability insurer (like Ironshore) that abandoned the defense of its insured during bankruptcy." Doc. 36 at 6-7. As the pleadings make clear, that is not what happened. 4 West was responsible for the loss, including defense costs, until 4 West exhausted its $500,000 self-insured retention. When 4 West settled with the Logans within that retention and obtained a full release, 4 West clearly had no motivation, or reason, to continue to pay defense costs. There was no "abandonment" by Ironshore.[7] More importantly, any *alleged* "abandonment" of 4 West is irrelevant. Ironshore's obligation to pay under the policy is dependent on whether 4 West has a legal obligation to pay the State Court judgment. Doc. 1-1 at 6. *Empire* and *Pool* unequivocally hold that no such obligation exists. *Pool*, 848 S.W.2d at 724 ("Because the [tort plaintiffs] retained no claim against [the insured] but instead released him from any liability, they cannot pursue any recovery from his insurer."); *Empire Indem. Ins. Co.*, 571 Fed. Appx. at 348 ("The unconditional release, therefore, meant [the insured]

---

[7] It is unusual though that 4 West did not instruct defense counsel to secure the dismissal of the State Court action after 4 West settled with the Logans. The record does not explain why that didn't happen. The "insurer carve out" language in the release suggests 4 West agreed to let the lawsuit pend to allow the Logans to attempt to pursue Ironshore's coverage. That, however, is just speculation.

was not, and could never be, legally liable for the underlying-action judgment. As a result, [the insured] cannot satisfy the insuring agreement, and neither [the insured] nor [the tort plaintiff] may require [the insurer] to pay a judgment for which [the] insured, was never liable.").

Second, the Logans argue that Ironshore is liable "notwithstanding the Release" under Georgia law.  Doc. 36 at 6.  Texas law applies to the release—a point which the Logans concede earlier in their response brief.  Docs. 1-3 at 3; 36 at 5 ("While the Release admittedly does state that it is to be interpreted under Texas law, that does not mean that Plaintiff's liability is construed under Texas law.").  Moreover, the Logans misstate Georgia law which also precludes a later judgment on the same claims against the same parties.  *See, e.g.*, *McClain v. George*, 267 Ga. App. 851, 854, 600 S.E.2d 837, 840 (2004) ("A settlement generally constitutes a final disposition of any claim against a party to that agreement unless remaining claims are specifically reserved."). The fact that the release purports to carve out claims against "*any insurer* of the Debtors *under the insurance policy*" does not alter this conclusion.  Doc. 1-2 at 3 (emphasis added).  Once again, 4 West settled and, thus, is not liable for the judgment and, thus, has not suffered a covered loss and, thus, Ironshore has no contractual obligation to pay under the policy.  The question is not whether the Logans have a claim against "any insurer" but whether they had a claim against 4 West.  Once 4 West settled within the retention they did not.  The Logans cannot use this "carve out" to create coverage where none exists.

Third, the Logans cite *Angus Chemical Company v. IMC Fertilizer Inc.*, 939 S.W.2d 138 (Tex. 1997).  Doc. 36 at 5-7.  *Angus* holds that in a direct action state, i.e.,

a jurisdiction that allows a third party to directly sue an insurer before obtaining a proper judgment against an insured,[8] the release of the insured does not necessarily bar a claim against an insurer.  *Id*. at 139.  The Logans do not have such a direct action against Ironshore, and *Angus* is not at all relevant to the issue here—whether the State Court judgment is a loss 4 West is "legally obligated to pay."[9]

Finally, the Logans argue that Ironshore's position "fails to account for the effect of its insured's bankruptcy," invoking the well-established principle that a discharge in bankruptcy does not relieve an insurer from any loss it is contractually obligated to pay.  Doc. 36 at 7-10.  The recognition that an insurer cannot benefit from an insured's inability to pay is found in every liability policy, including Ironshore's—"The Insurer will not be relieved of any of its obligations under this Policy by the bankruptcy or insolvency of any **Insured** or his/her/its estate."  Doc. 1-1 at 26 (emphasis in original).  First an aside, the debt in question was not discharged in bankruptcy; 4 West settled the Logans' case within their self-insured retention.  Second, and here again, the Logans' advance an argument that has no bearing on the issue.  The question is not whether 4 West is unable to pay; it did pay.  The question is whether 4 West, having paid for and obtained a full release, is legally obligated to pay the judgment the Logans obtained after releasing 4 West.  Clearly, 4 West is not.

---

[8] Fewer and fewer jurisdictions allow direct actions.  For example, Georgia by statute long allowed a direct action against a motor carrier's insurer.  O.C.G.A. §§ 40-1-112, 40-2-140.  Thus, plaintiffs routinely sued the motor carrier and its insurer or, if a plaintiff preferred, the insurer alone.  Effective July 1, 2024, O.C.G.A. § 40-1-112 has been amended to allow direct actions only in very limited situations.  S.B. 426, 157th Gen. Assemb., Reg. Sess. (Ga. 2024).

[9] Of course, a third party who obtains against an insured a proper judgment that is covered by an insurance policy may bring an action against the insurer.  That, in effect, is the posture of this case.  Hence, the question of whether the Logans' judgment is a covered loss is dispositive.

Under the policy, Ironshore is only liable for a loss its insured is obligated to pay. The release extinguished any obligation by 4 West and, thus, Ironshore has no contractual obligation to pay the State Court judgment.

### IV. CONCLUSION

The Court is satisfied that the Logans' judgment is not a covered loss.  However, the Court has some concern about the status of the record on Ironshore's motion for judgment on the pleadings.  Ironshore's complaint alleges, somewhat vaguely, that 4 West "exited bankruptcy and the automatic stay was lifted…" Doc. 1 ¶ 35.  All reasonable inferences drawn from the pleadings establish that 4 West settled the Logans' claim within its self-insured retention.[10]

Yet in their response brief, the Logans, with no citation to the record, state:

> [Ironshore] fails to mention that the bankruptcy trustee negotiated the limited release in the insured's bankruptcy and not the insured.  While it is true that the insured had no obligation to pay the Underlying Judgment, that was true by virtue of the Bankruptcy.

Doc. 36 at 10.  The Court is not sure what to make of that.  However, given the arguable vagueness of the record with regard to the bankruptcy proceedings, the Court considers it appropriate to convert Ironshore's motion for judgment on the pleadings (Doc. 32) to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  The Court will set a telephone conference to address scheduling.  In the meantime, the plaintiffs shall file ex parte true and correct copies of all documents relating to the settlement of the Logans' claim

---

[10] The docket in the bankruptcy proceedings supports this inference.  *See In re 4 West Holdings, Inc. et al.*, No. 18-30777-HDH, Doc. 1585, (Bankr. N.D. Tex. Mar. 6, 2018).  The GUC Trustee's Eleventh Omnibus Objection Seeking Disallowance of Certain Claims reflects that numerous claims on behalf of unidentified patients were disallowed as "satisfied claims" because "[a]cording to the Debtor's books and records, the claim has been satisfied."  *Id.*

against 4 West, including without limitation documents within the possession, custody and control of Mr. Reynolds and the Logans' current counsel.

The Logan's summary judgment motion is premised on the notion that Ironshore somehow breached its obligations to 4 West when Ironshore abandoned, as the Logans have put it, 4 West after the Logans settled with 4 West. Clearly, on these facts, the Court cannot conclude as a matter of law that Ironshore breached any obligations. Accordingly, the Logans' motion for summary judgment (Doc. 28) is **DENIED.**

**SO ORDERED**, this 2nd day of August, 2024.

                                                                   S/ Marc T. Treadwell
                                                                   MARC T. TREADWELL, JUDGE
                                                                   UNITED STATES DISTRICT COURT